214 So.2d 609 (1968)
FOUNTAINVIEW ASSOCIATION, INC., #4, a Florida Corporation Not for Profit, and Fountainview Association, Inc., #5, a Florida Corporation Not for Profit, Petitioners,
v.
Paul BELL, Norman Feinberg, Belle Bell and Saralyne Feinberg, Respondents.
No. 36991.
Supreme Court of Florida.
June 26, 1968.
Rehearing Denied October 31, 1968.
Norman H. Goldstein, North Miami Beach, for petitioners.
Frates, Fay, Floyd & Pearson, Miami, and Harold Zinn, Miami Beach, for respondents.
PER CURIAM.
This cause is here on a petition for writ of certiorari supported by certificate of the District Court of Appeal, Third District, that its decision is one which involves a question of great public interest. See Section 4(2), Article V, Constitution of Florida, F.S.A.
The factual circumstances, background and questions involved are set forth in the decision of the District Court reported at 203 So.2d 657.
We have considered the record, briefs and argument of counsel and hold that the District Court of Appeal correctly decided the issue before it.
The writ of certiorari is accordingly,
Discharged.
CALDWELL, C.J., and THOMAS, DREW, THORNAL and ADAMS, JJ., concur.
ERVIN, J., dissents with opinion.
ROBERTS, J., dissents and concurs with ERVIN, J.
ERVIN, Justice (dissenting).
This is a certiorari review of the decision of the District Court of Appeal, Third District, in Fountainview Association, Inc., v. Bell, 203 So.2d 657, which decision has been certified to us by that court as one passing upon a question of great public interest.
The Petitioners Fountainview Association, Inc., #4 and Fountainview Association, Inc., #5, both Florida corporations not for profit, as plaintiffs, brought suits in the Circuit Court in Chancery against Respondents, Paul Bell and Norman Feinberg and their wives, defendants below. The two plaintiffs administering the affairs of the two condominium projects sought, on behalf of themselves and their members or stockholders, an accounting and damages from defendants (Respondents), and rescission or reformation of certain contracts.
The grounds relied upon for relief and alleged in the complaints of the plaintiffs are that the defendants, while sole officers and directors of the plaintiff corporations had, without proper disclosure, dealt with themselves to their personal advantage and to the detriment of their corporations, notwithstanding that at all times it was expressly intended to invite the public to purchase interests in the plaintiff corporations and the public was invited by promotional advertising to become members of the condominium corporations, and that at the time of the transactions complained of persons other than the defendants had contracted to purchase interests in the plaintiff corporations.
*610 It is alleged, inter alia, in the complaints that the defendants as the original officers and directors of the corporations or associations, used the credit and participation represented by the subscriptions or contracts of purchasers of condominium units later to be constructed and the anticipated credit of prospective purchasers of condominium units in promoting and setting up the project and in forming the condominium corporations; and then as officers and directors sold lands held by them to the condominium corporations whereby they made secret or private profits by charging much more than the land was worth and by exacting excessive and unconscionable rentals on other lands leased by them to the corporations. It is alleged these secret manipulations of defendants were contrary to their fiduciary duty as agents for present and prospective owners of the condominium apartments not to make secret and unconscionable profits for themselves at such owners' expense, but that whatever advantages might be derived from the credit and participation of such owners in the successful consummation of the project should devolve upon the associations and their members. It is alleged that defendants used shoddy materials in the construction of the condominium apartment building in order to siphon off considerable of the subscribers' purchase funds that should have been used for better building materials. It is alleged the defendants formed a management corporation, their alter ego, ostensibly only to manage the condominium apartment building, but in reality it was also used fraudulently to pay themselves, out of the associations' common expense funds, unearned sums of money.
I think the complaint is sufficient to withstand a motion to dismiss and I would quash the decision of the District Court.
I agree with Petitioners that: (1) Respondents, the former corporate officers and directors, may not deal in behalf of the condominium corporations (or associations) with themselves where their personal interests and the interest of the corporations are adverse, the transactions are to their personal benefit and advantage, and detrimental to the best interest of the corporations and there are presently or prospectively other members of the corporations who had not been advised of nor consented to such dealings and transactions. (2) A complaint which alleges a failure and refusal upon the part of corporate officers and directors to deliver over the books and records of the corporations upon expiration of their terms of office and which prays for the delivery of said books and records, states a cause of action.
From the allegations of the complaints it appears the Respondent directors and officers at all times occupied a fiduciary or quasi-fiduciary relationship to the condominium nonprofit corporations or associations and their members, and as such they were bound to exercise corporate powers primarily in the interest of the condominium corporations or associations and not for their conflicting personal interests. 19 Am.Jur.2d Corporations § 1272. Such officers cannot make private or secret profits inconsistent with their corporate positions and must give the corporations and their members the benefit of any advantage which they thereby improperly obtain. Such profits are the subject of accounting if demanded by the corporation. Public policy requires that in the management of corporate affairs a corporate officer serve first the corporate interests and not his own. Guth v. Loft, Inc., 23 Del. Ch. 255, 5 A.2d 503. See also, 19 Am.Jur.2d Corporations, § 1281. Id.: 694, 695, § 1288. Ordinarily the proper forum for corporate relief in cases of deviations of officers from their corporate duty is equity. Orlando Orange Groves Co. v. Hale (Fla. 1932), 107 Fla. 304, 144 So. 674, and Flight Equipment and Engineering Corp. v. Shelton (Fla. 1958), 103 So.2d 615.
The chancellor below excused the defendant corporate officers from liability for their alleged transactions inconsistent with the corporate interests on the ground that at the time they were consummated, defendants *611 were the sole officers and members of the condominium corporations or associations and there were then no objecting creditors. He overlooked the allegations of the complaints that at the time of the transactions complained of other persons than defendants had acquired interests in the condominium corporations or associations by contract subscriptions hereinafter described. However, even if the chancellor had been correct in believing the defendants were the sole members of the corporations at the time of the transactions complained of, the defendants' duty to prospective members of the particular condominium corporations was as great as it would be toward existing members. 19 Am.Jur.2d Corporations § 1281, 18 Am.Jur.2d Corporations § 109, at 650, 651. See particularly, Old Dominion Copper Mining and Smelting Co. v. Bigelow, 203 Mass. 159, 89 N.E. 193, 40 L.R.A.,N.S., 314, affirmed 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009. See also Northridge Cooperative Section One v. Thirty Second Avenue Construction Corp., 2 N.Y.2d 514, 161 N.Y.S.2d 404, 141 N.E.2d 802, and Mitchell Gardens No. Three Cooperative Corp. v. Third B.N. Associates, Inc., 5 Misc.2d 454, 162 N.Y.S.2d 152.
Because of the nature of condominium projects and their operation and administration under our laws, the defendants as corporate officers from the time they became such assumed a trust or fiduciary relationship with the prospective subscribers or members of the condominium corporate associations to exercise good faith.
Our decision in Lake Mabel Development Corporation v. Bird, 99 Fla. 253, 126 So. 356, may have been responsible for leading the chancellor and the District Court into error in this case. However, the District Court had sufficient doubt of the decisive applicability of the Bird case to give us jurisdiction of the instant case by its certificate so we might resolve the uncertainty of whether the Bird case controlled. In the Bird case the complainant and three other promoters organized a corporation which then purchased lands owned by complainant in exchange for stock in the corporation, and a purchase money mortgage securing notes from the corporation to complainant. When the corporation sought to avoid foreclosure, our Court rejected its defense that complainant's transaction represented a conflict of interest because no others than the original promoters had become stockholders in the corporation, saying:
"* * * There is no averment in the pleadings or showing made by the record that any stock was ever issued or sold by the corporation to the public." (126 So. at 358.)
According to the complaints, the situation here is different. It is alleged the defendant promoters at all times from the beginning of the condominium project, pursuant to the condominium statute (F.S. Ch. 711, F.S.A.), of necessity intended to and did offer interests in the corporations to members of the general public. The distinction between the two cases is pointed up in an annotation in 85 A.L.R. 1276, III:
"It is established by the great weight of authority that where, at the time of the transaction out of which the promoters obtain the profit complained of, it is definitely intended by the promoters, or is contemplated by the scheme of promotion * * * that the public is to be invited to become original subscribers for stock in the corporation, and this intention or plan is carried out, the promoters are liable to the corporation on account of profits of which the future subscribers had no notice. * * *"
By taking advantage of the condominium statute (F.S. Ch. 711, F.S.A.) and operating thereunder to set up the corporate entities necessary in the formation and continuance of a condominium project, the defendants clearly indicated they intended to and did invite the public to enter contract subscriptions for the purchase of apartment units and become members in the condominium corporations. Section *612 711.12, F.S., specifically provides, "owners of units [in condominiums] shall be stockholders or members."
The articles of incorporation of plaintiffs (Petitioners) provide: "The corporation shall be conducted as a non-profit organization for the benefit of its members."
F.S. Section 711.08, F.S.A., provides that a condominium declaration shall provide, inter alia, for:
"(h) Voting rights of owners of units
(i) Method of amendment of declaration
(j) By-laws"
F.S. Section 711.11, F.S.A., provides in part:
"(2) The by laws [of a condominium] shall provide for the following:
"(a) The form of administration, indicating the title of the officers and board of administration, if any, and specifying the powers, duties, manner of selection and removal, and compensation, if any, of officers and boards.
"(b) Method of calling or summoning unit owners to assemble at meetings; the percentage of unit owners or voting rights required to make decisions, and to constitute a quorum. * * *"
Section 711.14 provides for common expenses and common surplus; it reads in part:
"(2) Funds for the payment of common expenses shall be assessed against unit owners * * *.
(3) The common surplus shall be owned by unit owners in the shares provided in the declaration."
Section 711.17 provides for the termination of a condominium by action of the unit owners who will then own the project in common.
It is quite apparent that our condominium statute is designed to create a corporate-stockholders relationship and the corporate officers have a fiduciary or trust relationship with the unit owners.
Notwithstanding the provisions of F.S. Chapter 711, F.S.A., and the cooperative or membership nature of a condominium project, the Respondents contend that the contracts actually entered into by individual members of the public with the subject condominium corporations or associations did not create an interest for them in the corporations equivalent to a stockholder relationship. They say the subscriptions or contracts entered into by members of the public made it plain that construction of a condominium type of apartment building was contemplated, with the individual buyer only to acquire a fee simple title to his individual apartment, together with his common share of the physical elements appurtenant thereto and no more. Thus they contend that despite Chapter 711 and the nature of condominium projects and rights of unit owners contemplated therein, the individual purchaser of a condominium unit at all times deals at arm's length with the condominium association or corporation and its officers and directors, and acquires only a fee simple title to his apartment unit in the condominium building without any added status or interest as a member or stockholder in the corporation, its affairs, operation or management. This is clearly not the situation either by statute or contract. Inspection of one of the copies of the contracts of unit purchasers included in the record discloses that the purchaser does acquire fee simple title to a described and numbered private apartment dwelling in a condominium apartment building for a stated sum of money. (The contract we have before us entitled the purchaser to one bedroom and one and a half baths for the price of $10,395.) But this is by no means all that is agreed to in the contract. At the closing of the transaction, the contract provides that along with deed to the apartment, the purchaser will be delivered "* * * copy of charter and by-laws of Seller corporation; and a copy of proposed *613 Declaration of Condominium to be filed upon completion of the building project. * * *"
The contract further provides:
"Each apartment owner will be responsible for assessments made by the Association for common expenses such as, but without limitation, management and administration; premiums on casualty, liability and workmen's compensation insurance; maintenance and repairs of the common property, utilities used in common; and obligations incurred with respect to recreational areas. The estimated monthly common expense for this apartment is approximately $42." (Emphasis supplied.)
The contract further provides purchaser's title to the unit shall be subject, inter alia, to:
"(d) The Articles of Incorporation and By-laws of Fountainview Association, Inc. 5 and the term, conditions and agreement as will be set forth in the Declaration of Condominium which will be filed of record submitting the subject property to condominium ownership under the laws of Florida, and which Declaration of Condominium will apply equally to all of the apartments in the apartment building project. * * *"
The contract further provides:
"The Purchaser will pay to the Seller the sum of $42.00 representing Purchaser's proportionate share of condominium association's initial required working capital."
I think it is clear each apartment unit owner is in practical effect a member or stockholder of the association, not only because it is expressly so provided in F.S. Section 711.12, F.S.A., but because his contract actually creates a corporate stockholder relationship between him and the condominium association. He is given a copy of the condominium charter, declaration and by-laws, and title to his apartment unit and his use of the unit are made subject thereto. He is also made subject to future undetermined assessments in common with other owners of apartment units for the "common expense" of managing and administering the Association. Some of the items of "common expenses" are listed in the contract, but the contract expressly provides common expenses may include other items of expense of management and administration not listed.
It appears from the foregoing terms of the purchase contract, considered in the light of F.S. Chapter 711, F.S.A., that the purchaser of a unit is an assessed and paying member of the Association and consequently has a pecuniary interest in the continuing management of the Association, its fiscal affairs and expenses, similar to an ordinary corporate stockholder. Any fraud or mismanagement of the Association by its officers or diversion of monies or misuse of credit provided by the purchasers or to be provided by prospective purchasers of units for the acquisition of the land or construction of the project or for the operation of the Association will be reflected in extra costs and losses to the membership and appear to be a proper subject of concern and inquiry of the apartment unit owners and in a proper case could be the subject of an equitable accounting.
The officers and directors of a condominium association, although they assumed promotional and organizers' status in the project's formation, would appear at all times to have a fiduciary duty and trustee relation to present and future apartment owners not to make secret or private profits and unconscionable deals adversely affecting the interests of the condominium association and the prudent management of the project. The impact of dishonesty and unscrupulous dealing on the part of original officers and directors in the inception of a condominium project almost inevitably will carry over and adversely affect the interests of association members, as has been found from experience to be the case under *614 similar conditions affecting the interests of corporate stockholders.
A condominium association does not involve an arm's length relationship as in the case of an outright sale of a dwelling between two strangers. It contemplates cooperative ownership of several apartment units in association with others and long continued, prudent management of the apartment building and the individual units as an integrated whole. If the project has been subjected to promotional fraud in its inception or overreaching in its management, its ability to be successful as a viable, cooperative project over a long period of time will be jeopardized. The association and its membership have a vital and continuing interest in seeing that its management is free of conflicts of interest and fraud.
A condominium association formed and operating under F.S. Chapter 711, F.S.A., and its association members, i.e., purchasers of apartment units in the condominium apartment building, who have contracted to be subject during the period of their ownership to assessment for the common expenses of the association, are tantamount to a private corporation and its stockholders. While it is true the members of the association will not receive stock dividends or similar return from their membership, this does not take them out of a stockholder class. Many stockholders in corporations do not receive profits by way of dividends or similar increments, but, as here, they may receive benefits in the form of reduced assessments or participation costs, if the corporate management operates honestly, economically and competently. In this connection, it is noted the figure of $42 in the contract is only an estimate of a member's monthly assessment. The monthly assessment may fluctuate depending upon the costs and charges arising in the continuing operation and maintenance of the project. It follows the members have a continuing interest in the subject of assessments for the common expense fund and that the assessments be made fairly and reasonably without fraud or overcharge.
One of the primary purposes of our condominium law is to give the association members legal status similar to corporate stockholders so they may require, if necessary, that the condominium project be operated free of fraud and conflicts of interest. There is no doubt the Legislature gave them voting rights in the association and power of removal of their officers to protect them from fraud and mismanagement. Such association members, because of their financial interest in having the association honestly and economically managed, are in proper cases entitled to an equitable accounting by officers and directors of the association concerning their handling of the affairs of the association and the production by the officers and directors of the books, records and accounts of the association for inspection by members and for accounting purposes.
The allegations of the complaints charging overreaching and breach of trust on the part of the defendant officers and directors, both in the promotional phase and in the subsequent management of the project, are sufficient to withstand a motion to dismiss and should be answered and the issues made thereby duly determined below.
I think the certified question should be answered as indicated above and the decision below quashed.
ROBERTS, J., concurs.