214 So.2d 741 (1968)
Abe WECHSLER et al., Appellants,
v.
Al GOLDMAN and Carl Goldman, Individually and Jointly, et al., Appellees.
No. 67-455.
District Court of Appeal of Florida. Third District.
August 6, 1968.
Rehearing Denied November 5, 1968.
Hughlan Long, So. Miami, Quentin Long, Hollywood, for appellants.
Sibley, Giblin, Levenson & Ward, Miami Beach, Shalle Stephen Fine, Monroe Gelb, Miami, for appellees.
Before CHARLES CARROLL, C.J., and PEARSON and SWANN, JJ.
PER CURIAM.
The plaintiffs below appeal from an adverse final decree in a suit filed for cancellation or modification of a lease and for other relief. The facts as found and stated in the decree were as follows:
"(1) This is an action brought by Abe Wechsler, Michael Freedman, Julius Marcus, Robert Benowitz, Jack Goldstein and George Rosenberg purportedly representing themselves and a class of persons who are similarly situated and also by Sky Lake Gardens #1, Inc., Sky Lake Gardens #2, Inc., and Sky Lake Gardens #3, Inc., each a Florida condominium corporation, against Al Goldman and Carl Goldman, individually and jointly, Sky Lake Gardens Recreation, Inc., Goldman Brothers, Inc., Lakes Development #1, Inc., Lakes Development #2, Inc., and Lakes Development #3, Inc., each a Florida corporation, defendants.
"This action was brought by the purported class to cancel or modify certain 99 *742 year leases entered into by various members thereof and to make the liens of those leases null and void. The three plaintiff corporations seek also to have the aforesaid leases cancelled or modified and in addition ask that certain parking spaces in the condominiums with which they are connected be corrected as to the number and size and further that reimbursement for lawn sprinklers be made to two condominiums and that a lawn sprinkler be installed in the third condominium by defendants and further that certain bulkheads be installed by defendants and walkways fenced at the condominium site. In addition, one condominium asks for an accounting for certain insurance proceeds alleged to have been diverted from it by defendants.
"(2) The court finds that the defendants, Lakes Development #1, Inc., and Lakes Development #2, Inc., and Lakes Development #3, Inc., were the developers and sellers of three condominiums located in North Dade County and commonly known as Sky Lake Gardens #1, Sky Lake Gardens #2, and Sky Lake Gardens #3 respectively. The Lakes Development Companies contracted to sell the condominium units in the apartment buildings which they were constructing to various purchasers. All in all, the Lake Development Companies sold apartments to some 320 unit purchasers. A fourth developer, not a party to this cause, sold some 80 additional units known as Sky Lake Gardens #4. Each unit purchaser executed a separate contract with his seller corporation. These contracts were generally executed in a model apartment constructed by the selling corporation and located at the property or an office occupied by the sellers near the site location. The purpose of the model apartment was to demonstrate the lay out of the condominium apartment units which were being sold.
"(3) The plan under which the various purchasers bought their units required that each occupant would pay to the condominium corporation for his condominium, a monthly maintenance charge, the amount of which was stated in each of the separate contracts signed by the various purchasers with the selling corporations.
"(4) Many of the individual purchasers were represented by counsel prior to or at the signing of the contracts for purchase, and at the request of some of purchasers or their counsel, alterations or changes were made in their individual purchase contracts. Similarly, many purchasers were represented by counsel at the closing of their purchasers, and some changes in documents were made at the closings.
"(5) At the closing of each of the condominium purchase transactions contemplated by the various purchase contracts, the individual unit owners each executed as guarantor and beneficiary a 99 year lease on the communal recreational facilities which were to be used by the owners of units in the condominiums. These were 99 year leases between Sky Lake Gardens Recreation, Inc., as lessor, and each of the plaintiff corporations as lessee. The rental under said leases was to be and has been paid by the plaintiff corporations out of the monthly maintenance charges that the unit purchasers contracted to pay. Every purchaser in Sky Lake Gardens #1, Sky Lake Gardens #2 and Sky Lake Gardens #3 executed such a lease as guarantor and beneficiary with the exception of Mr. Herbert Newell. Mr. Newell testified at final hearing that he knew about the said lease although he refused to execute it and he was given possession of his condominium unit by the seller without executing the lease upon payment of his purchase price, and that he thereafter paid his maintenance monthly and used the recreational facilities.
"(6) Each of the purchasers of a condominium unit has made the required monthly payments as set in their contracts of purchase and no unit owner has paid or been obliged to pay more than he contracted to pay each month for maintenance and the payments on the 99 year leases have *743 been made and said leases are currently in good standing.
"(7) Of the plaintiffs purporting to represent a class, Abe Wechsler has transferred all of his right, title and interest in and to condominium property which is the subject matter of this lawsuit and consequently has no standing as party plaintiff either individually or as the representative of a class. Of the remaining individuals purporting to represent a class, Messrs. Michael Freedman, Julius Marcus, Jack Goldstein and George Rosenberg did not testify at the final hearing.
"(8) Mr. Robert Bernowitz, the only individual suing in behalf of the purported class who did testify, tendered in evidence his contract with the defendants, Lakes Development #2, Inc., which contract is several on his part and not a joint contract with any other condominium unit purchaser and Mr. Bernowitz testified that he accepted the benefits of that contract and that he had never paid more than he knew that he would have to pay when he signed the contract.
"(9) Nearly thirty units in the three condominiums have been transferred by their original owners. Virtually all of the deeds of transfer make the new owners' interest subject to the 99 year lease signed by the original owner.
"(10) An inspection of the state tax stamps attached to the deeds described in par. 9 and introduced in evidence indicates that units in the condominiums are selling at or above the prices for which they were sold by the Development Corporations as reflected in the price list put in evidence by the plaintiffs. The court finds that virtually none of those deeds refer to sales of furniture along with said units, and even so notes the advance of prices.
"(11) The only instance beside Mr. Newell of any person objecting to the lease to the point of refusing to close his unit purchase was that of Mr. Milton Gutman, and the defendants thereupon offered to terminate the contract and return Mr. Guttman's deposit, which he refused, electing to close his transaction.
"(12) The court finds no instance in which any purchaser was bullied, threatened or harassed into signing a contract or closing a purchase or signing a lease with defendants. In the case of each condominium, the condominium documents including the Declaration of Condominium, the Articles and By Laws of the appropriate plaintiff condominium corporation and the ninety year lease in question were recorded in the public records of Dade County, Florida before transactions in the condominiums were closed, and each purchaser was on constructive notice of those documents when he closed. In addition, the evidence shows that the developers caused abstracts reflecting those documents for each condominium to be prepared and made available to those purchasers requesting them. Additionally, copies of the proposed condominium documents were furnished to purchasers at or before they signed their contracts. The unit owners who testified at final hearing were not young men, but they were alert and vigorous and capable of withstanding cross examination by experienced counsel. They were without exception men of experience in worldly affairs and in the conduct of business and they had occupied positions of responsibility in their work.
"(13) It does not appear that defendants or any of them contracted either expressly or impliedly to furnish to any of the plaintiff corporations or their members a sprinkler system for their lawns, and in fact, two of the corporations have recognized this by installing sprinklers at their own expense.
"(14) It appears that the shoreline of the condominium property bordering on Sky Lake was properly constructed by defendants' predecessors in title in accordance with the requirements of law and it does not appear that defendants or any of them contracted either expressly or impliedly *744 with plaintiffs or any of them to do more than was done.
"(15) It does not appear that there is any obligation either express or implied on the part of any of the defendants to erect a fence on the lake walkway and it affirmatively appears that said walkway is an alternate and not an exclusive route around the premises.
"(16) There is no obligation upon defendants or any of them to alter any parking spaces except insofar as they have offered to do so before the institution of this suit, which offer was refused.
"(17) The testimony fails to establish any impropriety on the part of any defendant in the handling of an insurance claim but only shows some common gossip by unit owners.
"(18) The Recreation Area constructed for the condominiums is adequate and proper for the use of the unit owners. The facility will accommodate a large portion of the unit owners, and while there were overflow crowds on isolated occasions that alone does not make the facility inadequate."
The appellants challenged certain of the findings of facts as being unsupported by the evidence. On inspection of the record we hold the findings of the trial judge are supported by the record and are not shown to be contrary to the weight of the evidence.
The principal question here relates to the validity of a lease which the promoters (through corporations owned or controlled by them) made to the condominium associations for use of the recreation area. In making that lease the promoters, in effect, were dealing with themselves. It is disclosed that the rental which they thus imposed on the condominium associations for use of the represented recreational area was exorbitant, amounting to more per year than the assessed value of the property leased; and that thereby the promoters acquired for themselves an excessive profit at the ultimate expense of the purchaser-members of the condominium associations which they had created and sold under Chapter 711, Fla. Stat., F.S.A., the Condominium Act (Laws of 1963, ch. 63-35).
The individual plaintiffs sought to cancel the lease. The plaintiff condominium associations sought to have the rental revised to a realistic and reasonable amount. The rights of the individual plaintiff members are affected by the fact that they acquired knowledge of the lease at the time they closed their purchase contracts and by their express acceptance of the lease in their closing contracts notwithstanding the fact that they were not advised of the lease earlier when they were solicited as purchasers and signed preliminary contracts.
It is not without some reluctance that we hold the plaintiff condominium associations do not have a cause for relief against the claimed exorbitant lease rental obligation imposed on them while both lessor and lessee were owned or controlled by the promoters. However, we affirm the decree on the authority of Fountainview Association, Inc., No. 4 v. Bell, Fla.App. 1967, 203 So.2d 657, which, on review by the Supreme Court of Florida, recently was held to have been correctly decided. See Fountainview Association, Inc. v. Bell, Fla. 1968, 214 So.2d 609, in which the opinion of the Supreme Court was filed June 26, 1968.
What occurred in this instance and in the Fountainview case may indicate a need for legislative action to amend the Condominium Act (Ch. 711, Fla. Stat., F.S.A.) to prevent unfair dealing by promoters of condominium associations.
Affirmed.