282 So.2d 628 (1973)
POINT EAST MANAGEMENT CORPORATION, a Florida Corporation, Petitioner, Cross/Respondent,
v.
POINT EAST ONE CONDOMINIUM CORPORATION, INC., a Florida Nonprofit Corporation, et al., Respondents, Cross/Petitioners,
No. 42228.
Supreme Court of Florida.
July 31, 1973.
Rehearing Denied October 3, 1973.
*629 Darrey A. Davis, of McCarthy, Steel, Hector & Davis, Miami, for petitioner, cross-respondent.
Ray H. Pearson, Gerald F. Richman and Bertha Claire Lee, of Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for respondents, cross-petitioners.
ADKINS, Justice.
By petition and cross-petition for writ of certiorari, we have for review a decision of the District Court of Appeal, Third District (258 So.2d 322), which allegedly conflicts with a prior decision of this Court (Lake Mabel Development Corporation v. Bird, 99 Fla. 253, 126 So. 356 (1930)) on the same point of law. We have determined that we have jurisdiction pursuant to Fla. Const., art. V, § 3(b)(3), F.S.A.
Petitioner is the original developers of the Point East condominium project, a management corporation contracted to manage the project for a period of 25 years, and lessors of a recreation facility to the condominium association on a 99-year lease. The various identities of petitioner simply represent different stages of the developers' involvement with the project. Petitioner developed the condominium project and, subsequent to the formation of the condominium associations, contracted with itself for management of the condominiums and for the lease.
Respondents are the condominium associations  as presently constituted by individual condominium unit owners  who brought suit for rescission of the lease and management contract, for damages in fraud, for damages for breach of a fiduciary duty, and for damages for breach of contract. All relief sought was denied by the trial court except for invalidation of the management contract, and the District Court of Appeal, Third District, affirmed.
Petitioner seeks a reversal of the District Court of Appeal on the invalidation of the management contract, and respondents, by cross-petition, seek reversals of the District Court of Appeal on the affirmance of all other holdings of the trial court.
We have carefully reviewed those issues raised by the cross-petition and find them to be without merit. However, we have determined that the point raised by petitioner is meritorious, and the District Court of Appeal must be reversed on its invalidation of the management contract.
The District Court of Appeal recognized that rescission of the management contract would not lie merely because it arose from the dealings of the developers with themselves while they constituted all of the members of the condominium associations and of the management corporation. Lake Mabel Development Corporation v. Bird, supra.
However, the District Court of Appeal held that the 25-year management contract is void because it violates the provisions of the Condominium Act in wresting the control of the management of the condominiums away from the associations. This interpretation is based on three sections of the Condominium Act.
First, Fla. Stat. § 711.03(2), F.S.A., defines the association as "the entity responsible for the operation of a condominium." Fla. Stat. § 711.03(12), F.S.A., then defines operation of the condominium as including "the administration and management" of the property. Finally, the District Court of Appeal relies upon Fla. Stat. § 711.12(1), F.S.A., which provides:
"The operation of the condominium shall be by the association, the name of which shall be stated in the declaration."
The District Court of Appeal then, in effect, rescinded the contracts complained of, holding them to be invalid because they
"[D]ivest from the association in a material or substantial degree the power *630 and privilege granted it by the statute to operate the condominium... ." Point East Management Corporation v. Point East One Condominium Corporation, 258 So.2d 322, p. 325.
We cannot agree with the District Court of Appeal that the Legislature, by placing in the condominium associations the power and duty to manage the condominimum properties, intended to restrict the ability of the associations to contract for the management of the associations. The fact that the contract is of long duration does not make the contract any more objectionable, and as pointed out in Lake Mabel Development Corporation v. Bird, supra, the fact that the developers of the condominiums contracted with themselves for the management contract does not invalidate it.
The Legislature has chosen, through the adoption of Fla. Stat. § 711.13(4), F.S.A., which became effective January 1, 1971, to allow the owners of condominium units to cancel initial management contracts by a vote of 75 per cent of the owners of the individual units. Accordingly, it must be assumed that the Legislature recognized the existence of and chose not to abolish such contracts. It is impossible, therefore, to discover a legislative prohibition against a management contract.
The fact of the contract and its terms were made known  or at least available  to all who bought or considered buying condominium units, and the contracts of sale included affirmation of the management contract. Admittedly, a prospective purchaser had no option as to the management contract, but he knew or should have known that the contract was part of the purchase price of his condominium unit. Considered in that light, enforcement of the contract cannot be said to work a hardship on the present condominium owners.
Accordingly, that portion of the decision of the District Court of Appeal, Third District, which sought to invalidate the management contract between petitioner and respondents is quashed, and the remainder of the decision is approved. The cause is remanded to the District Court of Appeal, Third District, for further proceedings not inconsistent herewith.
It is so ordered.
CARLTON, C.J., McCAIN and DEKLE, JJ., and MAGER, District Court Judge, concur.
ERVIN, J., dissents with opinion.
BOYD, J., dissents and agrees with ERVIN, J.
ERVIN, Justice (dissenting):
We are clearly without jurisdiction to decide the merits of petitioner's cause under Article V, Section 3(b)(3), Florida Constitution, F.S.A. The decision under review does not conflict with Lake Mabel Development Corporation v. Bird, 99 Fla. 253, 126 So. 356 (1930), and the writ of certiorari should now be discharged as having been improvidently issued.
Lake Mabel involved a defense raised in mortgage foreclosure proceedings brought by one of the original promoters against the corporation. The corporation sought to avoid the foreclosure by arguing that the promoters had made a substantial profit on the sale of the mortgaged lands in which they owned all of the outstanding stock.
After specifically noting that
"there is no averment in the pleadings or showing made by the record that any stock was ever issued or sold by the corporation to the public,"
this Court stated:
"A corporation cannot, while its promoters own all its outstanding stock, avoid in equity a purchase of property sold to it by its promoters at a large profit, represented by stock of the corporation issued to such promoters, since the corporation thus has full knowledge of the *631 facts and the rights of innocent purchasers of stock have not arisen." Id. at 358.
Note my dissenting opinion in Fountainview Association, Inc. # 4 v. Bell, 214 So.2d 609, at 611 (Fla. 1968).
The principles espoused in the 1930 Lake Mabel decision were never discussed by the District Court of Appeal below. Indeed, it is unlikely that the court gave any consideration to applying that decision to the cause presently under review for two reasons:
1) Unlike Lake Mabel, the instant case involves condominium association corporations that by their very nature are intended to be composed of members of the general public. 2) The Condominium Act was passed thirty-three years after the Lake Mabel decision, and was expressly designed by our Legislature "to give statutory recognition to the condominium form of ownership of real property." F.S., Section 711.02, F.S.A. In the case sub judice the District Court of Appeal rested its decision almost exclusively upon an interpretation of the provisions of that act. The Lake Mabel decision is wholly irrelevant and the citing of it for conflict is a legal non sequitur.
Having mistakenly reached the merits of petitioner's claim, the majority have proceeded to misconstrue the Condominium Act (F.S., Chapter 711, F.S.A.). The four similar management contracts between the condominium associations and the management corporation, which the trial court and the District Court of Appeal, Third District, have found to be invalid, contain provisions inimical to F.S., Sections 711.03(2), 711.03(12), and 711.12(1), F.S.A.
As is stated in the majority opinion, the petitioner, as developer of the condominium, contracted with itself for management of the condominium and for the lease. Thus, the management contracts were executed by the developers while they controlled the condominium associations prior to their present makeup of individual condominium apartment owners. The resulting lopsided character of these "agreements" are best evidence by an examination of the provisions contained therein. The contracts extend for periods of up to twenty-five years with no right of termination by the condominium associations except for cause after sixty days notice of default. The manager [petitioner], "to the exclusion of all persons including the Association [respondent] and its members [presently, the apartment owners]" is given, in part, the following powers:
1) The right to hire, supervise, and fire, "in its absolute discretion" such persons as are required to fulfill its duties under the management agreement.
2) The power to collect all assessments from the associations' members and to take such action in the name of the associations as is needed to collect payment  to include "foreclosing the association's lien therefore, or by way of other legal process as may be required... ."
3) The power to carry on "normal" maintenance and repair work except that no one item of repair is to exceed $30,000.00 unless authorized by the associations.
4) The right to purchase "equipment, tools, vehicles, appliances," etc., as are "reasonably necessary" to perform its duties.
5) The right to maintain all books and records subject only to the right of the associations to conduct an independent audit at their own expense.
6) The right to deposit funds collected from the associations either in a special bank account or to commingle the monies with similar funds "as the Manager shall determine."
7) The right to "retain and employ attorneys-at-law, tax consultants, certified public accountants, health consultants and such other experts and professionals whose services the Manager may reasonably require. *632 ..." (The result of this provision is that the apartment owners are paying the costs sustained by both parties in the present suit.)
8) The power to insure that payments received from assessments or other revenue are sufficient to pay the costs of all services and to adequately fund reserves. Failure of the associations to increase the monthly assessments as requested by the manager "within a reasonable time may, at the option of the manager, be construed as a breach of this agreement."
The above provisions are only a sampling of the terms of the "Management Agreement" that was before the trial court together with voluminous testimony attesting to the impotency of the associations to have the benefits and to function autonomously under the Condominium Act when saddled by the terms of what amount to adhesion contracts together with details of the resultant excessive and overreaching extractions mulched from the unit owners. These provisions led the trial court to conclude:
"The Management Agreements in this case, considered in light of their specific provisions and the length of their terms, completely and effectively delegate and abdicate the responsibility and control of the plaintiff, Condominium Associations to the defendant. This delegation and abdication of responsibility and control exceeds the bounds of statutory authority and defeats the purposes of the Condominium Act." Point East Management Corp. v. Point East One Condominium Corp., 258 So.2d 322, at 324 (Fla. App. 1972).
F.S., Section 711.03(2), F.S.A., defines the association as "the entity responsible for the operation of a condominium" and Section 711.03(12) defines operation of a condominium as including "the administration and management of the condominium property." The unmistakable intent of the Legislature as reflected in that language is further reenforced by the following statement appearing further in the Condominium Act: "The operation of the condominium shall be by the association, the name of which shall be stated in the declaration." F.S., Section 711.12(1), F.S.A.
This language does not mean that the associations cannot enter into management contracts so long as they are ultimately responsible as a self-autonomous group for the administration of the property and maintain supervision and control over the managing party. The long duration of the contracts herein makes them statutorily objectionable because it serves to undercut the legislative mandate of autonomy for the unit owners. That problem is further compounded in the present case because the associations (i.e., the developers) were of an entirely different composition when the contracts were negotiated. As is stated in petitioner's brief and may be taken as an admission against interest:
"At the time the Management Agreements and the Community Facilities Lease were made, no interests of any purchasers or other third parties were involved. No apartment units had been sold. The developer ... was the sole owner of all apartment units and the entire condominium property, and the developer was the only member of the associations. No interests of anyone other than the developer were in anywise affected by the Management Agreements and the Community Facilities Leases."
Petitioner then asserts, as does the majority, that no harm resulted from this blatant attempt to circumvent the intent and mandate of the Condominium Act because "the apartments were sold and purchased with full disclosure and complete knowledge of the contents of the Management Agreements and Community Facilities Leases... ." Such rationalization not only ignores the statutory provision for association autonomy, but completely ignores the reality of unequal bargaining positions between individual apartment purchasers and a multi-million dollar corporation intent on *633 foisting long-term management contracts of adhesion upon them, contrary to regulatory law.
The fact that the Legislature has more recently taken further steps to insure that such unconscionable contracts can be terminated by a vote of seventy-five percent of the apartment unit owners does not have the secondary effect of rendering Respondents remediless in this litigation because the subject contracts were entered into prior to the effective date of that legislation. See, F.S., Section 711.13(4), F.S.A. The fact that the Legislature became more acutely aware of this problem and further acted three years ago to bolster remedies against future injustice, does not mean that the courts are powerless to strike down an illegal contract that is clearly violative of other provisions of, F.S., Chapter 711, F.S.A., in effect at the time the contracts were signed.
Having accepted jurisdiction in this cause, the majority would do better to focus their attention on Respondent's cross-petition as it pertains to its original suit brought against the management corporation seeking damages in excess of $500,000 for fraud, breach of a fiduciary duty, and breach of contract. In affirming the trial court's refusal to grant the associations an accounting by the management corporation and damages, the District Court of Appeal, Third District, held that "the findings of the trial court in that regard are not without support in the evidence." Point East Management Corp. v. Point East One Condominium Corp., 258 So.2d 322, at 325 (Fla. App. 1972). It also accepted the trial court's finding that the Community Facility Lease was valid and binding by virtue of estoppel although "the lease in question contains provisions which appear to be of a kind that might be expected to motivate a court of equity to grant relief therefrom to the associations upon which the lease was thus imposed." Id. at 326. (Emphasis supplied.)
The doctrine of estoppel should not serve as a refuge for a party whose apparent fraud, as reflected in the record, effected the imposition of a 99-year lease at what would appear to be an exorbitant net rental of $222,000 per year, upon the apartment owners. An examination of the record indicates that the lease in question should be declared void as not complying with, F.S., Sections 711.08(1)(e) and 711.12, F.S.A.
I should like to reiterate a portion of my dissent in Fountainview Association, Inc. # 4 v. Bell, supra, 214 So.2d, at 613-614, that has relevance to the cause instanter:
"It appears from the foregoing terms of the purchase contract, considered in the light of F.S. Chapter 711, F.S.A., that the purchaser of a unit is an assessed and paying member of the Association and consequently has a pecuniary interest in the continuing management of the Association, its fiscal affairs and expenses, similar to an ordinary corporate stockholder. Any fraud or mismanagement of the Association by its officers or diversion of monies or misuse of credit provided by the purchasers or to be provided by prospective purchasers of units for the acquisition of the land or construction of the project or for the operation of the Association will be reflected in extra costs and losses to the membership and appear to be a proper subject of concern and inquiry of the apartment unit owners and in a proper case could be the subject of an equitable accounting.

* * * * * *
"A condominium association does not involve an arm's length relationship as in the case of an outright sale of a dwelling between two strangers. It contemplates cooperative ownership of several apartment units in association with others and long continued, prudent management of the apartment building and the individual units as an integrated whole. If the project has been subjected to promotional fraud in its inception or overreaching in its management, its ability to be successful as a viable, cooperative *634 project over a long period of time will be jeopardized. The association and its membership have a vital and continuing interest in seeing that its management is free of conflicts of interest and fraud.
* * * * * *
"One of the primary purposes of our condominium law is to give the association members legal status similar to corporate stockholders so they may require, if necessary, that the condominium project be operated free of fraud and conflicts of interest...." (Emphasis supplied.)
The majority has seized upon an irrelevant, outmoded case (Lake Mabel) decided long before condominiums and their statutory regulation were contemplated in Florida law and used it as the conflict basis to quash the relief afforded below. In vain have the Legislature and the lower courts attempted to provide remedies to condominium associations for patent developers' fraud and overreaching, always running afoul of curiously irrelevant decisions at this level.
The enigmatic formulation of another ill-founded decision in this area of the law only serves to put Florida further out of touch with the holdings of most jurisdictions. Florida has experienced a phenomenal growth in condominium housing in recent years; our jurisprudence should be undergoing a similar progression. It is time to bring a halt to a line of decisions that are frustrating our Legislature's efforts. See, e.g., Fountainview Association, Inc. # 4 v. Bell, supra; Riviera Condominium Apartments, Inc. v. Weinberger, 231 So.2d 850 (Fla.App. 1970); Wechsler v. Goldman, 214 So.2d 741 (Fla.App. 1968). As is stated in a recent law review article:
"In most jurisdictions the developer is treated as a fiduciary acting on behalf of unknown persons who will purchase and become members of the association. Under this theory any overreaching could result in voidable sales contracts. However, as illustrated by the Fountainview, Riviera, and Wechsler decisions the Florida courts rejected the majority position. By casting condominiums within a corporate law framework the courts had permitted developers to bind future purchasers to contracts executed prior to transmission of board control to the unit owners. Since the rights of innocent parties did not arise until closing, developers could use legal gymnastics to gain exorbitant profits." Florida Condominiums  Developer Abuses and Securities Law Implications Create A Need for a State Regulatory Agency. 25 U.Fla. L.Rev., 350, 355 (1972).
BOYD, J., concurs.