BEVERLY ANNE BARCLAY, trustee, vs. WILLIAM DeVEAU
& others.[1]

Suffolk.    May 15, 1980. — January 27, 1981.

Present: BROWN, GREANEY, & PERRETTA, JJ.

*Condominiums*, Declaration of trust, Management.

General Laws c. 183A, § 10(*a*), requires that condominium unit owners
have a proportionate voting interest in a unit owners' organization for
the management and regulation of the condominium and not merely a
"beneficial" or ownership interest with no voice in the management.
[239-242]
A provision of a declaration of trust of a condominium unit owners' or-
ganization which permitted the developer to appoint two of the three
members of the board of trustees and the unit owners to appoint but
one trustee until such time as the developer owned fewer than twelve
of the 137 units violated the mandatory provisions of G. L. c. 183A,
§ 10(*a*). [242-244] GREANEY, J., dissenting, on the ground that
§ 10(*a*) does not prohibit unit owners from entering into valid con-
tracts governing the condominium's management.

CIVIL ACTION commenced in the Superior Court on
May 24, 1978.

The case was heard by *Lee*, J., a District Court judge sit-
ting under statutory authority.

*Wade M. Welch* (*Regina L. Quinlan* with him) for the
defendants.

*Peter B. Farrow* (*M. Frederick Pritzker* with him) for the
plaintiff.

BROWN, J.    In this dispute as to who constitutes the
legitimate members of the board of trustees of the Vendome
Condominium Trust, the unit owners' organization (see
G. L. c. 183A, §§ 1 & 10)[2] of the Vendome Condominium,

[1] Tina Howell, Hal Lieberman, Regina Quinlan and Ronald Rolly.
[2] General Laws c. 183A, §§ 1-19, was inserted by St. 1963, c. 493, § 1.

we are asked to decide whether a provision of the declaration of trust which permits the developer, who retains ownership of only a small percentage of the condominium units, to appoint two of the three members of the board of trustees and the owners of the majority of units to appoint but one trustee is permissible under G. L. c. 183A, § 10. Chapter 183A, § 10, provides:

> "(a) Each unit owner shall have the same percentage interest in the corporation, trust or unincorporated association provided for in the master deed for the management and regulation of the condominium as his proportionate interest in the common areas and facilities. Such interest shall not be separated from ownership in the unit to which it appertains and shall be deemed conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument."

A District Court judge, sitting by designation in the Superior Court, ruled that the trust provision was enforceable for a "reasonable period of time" and enjoined the defendant trustees, who had been selected by the unit owners to replace the developer's appointees, from exercising any powers as trustees. We reverse.

The following facts are taken from the judge's findings, supplemented by the record.

The Vendome, which is the first mixed use (i.e., residential and commercial) condominium in greater Boston, was owned and created by the Franchi Development Trust, of which Pasquale Franchi is the sole beneficiary. After the Franchi Development Trust defaulted on a loan with the Commonwealth Capital Investment Corporation, the name of the trust was changed to Vendome Development Trust ("development trust"), the former trustee resigned, and a new trustee designated by the mortgagee was appointed to manage the condominium and market the unsold units.

That trustee (the plaintiff in this case) then appointed two of the three members of the board of trustees of the unit owners' organization (who were also designated by the mortgagee). She acted pursuant to section 3.1.3 of the declaration of trust of the unit owners' organization, which provides that until the development trust owns fewer than twelve units, it has the right to appoint two trustees to the board of the condominium trust and that during that period the total number of trustees will be limited to three.

The dispute with the unit owners over control of the board of trustees of the unit owners' organization arose after a thirty-eight percent increase in common area charges was approved in late 1977. At a special meeting in May, 1978, the unit owners voted, by approximately a sixty percent majority, to remove the two appointed trustees, expand the board to seven, and appoint five new trustees (the defendants in this case).[3] Section 3.3 of the declaration of trust permits the unit owners to remove a trustee by a vote of the owners of fifty-one percent of the beneficial interest; however, it subordinates that right to the right of the development trust to retain the trustees of its choice until fewer than twelve units remain unsold.[4]

The plaintiff, as trustee of the development trust, then brought this action to enjoin the newly elected trustees from assuming any duties of that office, claiming that her appointees are the legitimate trustees by virtue of sections 3.1.3 and 3.3 of the declaration of trust. The unit owners contend that these provisions are invalid under G. L.

---

[3] The third member of the existing board, who had been elected by the unit owners, was to remain in office; the seventh position was to be filled by the development trust.

[4] The declaration of trust can be amended by the trustees with the consent of the owners of seventy-five percent of the beneficial interest. The unit owners did not attempt to do this; they claim that (1) it was unnecessary because the provisions in dispute here are invalid, and (2) it would have required the agreement of the trustees already on the board, which might not have been forthcoming.

c. 183A, § 10(*a*).[5]  At the time of the trial twenty-three units (all commercial) of a total of 137 units remained unsold.[6]

The judge ruled that the disputed provisions did not violate G. L. c. 183A, § 10(*a*), enjoined the defendants from exercising power as trustees, and entered final judgment for the plaintiff.  He also ruled that the condominium was still in its marketing phase and that because no time limit was placed on the power granted to the development trust by section 3.1.3, "the power, even if valid, will only be enforced for a reasonable period of time."

The plaintiff contends that the declaration of trust of the unit owners' organization meets the requirement of G. L. c. 183A, § 10(*a*), that each unit owner have "the same percentage interest" in the unit owners' organization "as his proportionate interest in the common areas and facilities" by providing in Section 4.1 that each unit owner shall have the same *beneficial* interest in the trust as his/her proportionate interest in the common areas and facilities, and that the statute does not require that unit owners also have the

---

[5] The master deed and the confirmatory master deed of the Vendome Condominium recite that the condominium is governed by and subject to G. L. c. 183A, and the purchase and sale agreements state that a declaration of trust has been recorded "establishing an organization of condominium unit owners in accordance with section 10 of [c. 183A]."  Section 2.1 of the declaration of trust states that "this trust [is] the organization of the unit owners established pursuant to the provisions of section 10 of said Chapter 183A for the purposes therein set forth."  See c. 183A, § 2.

[6] Twelve units (the point below which the developer would no longer control the organization under section 3.1.3 of the declaration of trust) would constitute less than nine percent of the total number of units in the condominium; twenty-three, approximately seventeen percent.  Chapter 183A, § 1 (see note 8, *infra*), defines voting percentages in terms of percentages of interest in the undivided areas.  Since we do not know which units remain unsold, we do not know what percentage these constitute in terms of interest.  However, we note that if the twelve units with the smallest interest in the common areas were the last to be sold, the developer could, under the provision in question, appoint two-thirds of the members of the board while owning less than five percent of the units measured in terms of ownership interest in the common areas.

same percentage interest in voting as their percentage interest in the common areas.

However, in our opinion the language of the statute itself requires that the unit owners have a proportionate voice in the management of the unit owners' organization, since it provides that "[e]ach unit owner shall have the same percentage interest in the corporation, trust or unincorporated association . . . *for the management and regulation of the condominium* as his proportionate interest in the common areas and facilities" (emphasis added). The plaintiff's interpretation would require us both to ignore the italicized language and to read the limiting word "beneficial" into the statute.[7] Moreover, a reading of the statute as a whole (see *Universal Mach. Co.* v. *Alcoholic Beverages Control Commn.*, 301 Mass. 40, 44 [1938]; 2A Sands, Sutherland Statutory Construction §§ 47.02 & 47.06 [4th ed. 1973]) leaves no doubt that the Legislature intended that the unit owners have a proportionate interest in the management of the organization and not simply a "beneficial" or ownership interest with no voice in management. First, c. 183A, § 1 (inserted by St. 1963, c. 493, § 1), defines the organization of unit owners as "the corporation, trust or association *owned by* the unit owners and *used by them to manage and regulate* the condominium" (emphasis added). In addition, c. 183A, § 8 (inserted by St. 1963, c. 493, § 1), provides that "[t]he master deed . . . shall contain the following particulars: . . . (*i*) The name of the corporation, trust or association which has been formed and through which the *unit owners will manage and regulate* the condominium . . . ." (emphasis added).

Further, the plaintiff's interpretation would require us to ignore traditional assumptions as to the very definition and concept of a condominium. See, e.g., Berger, Condominium: Shelter on a Statutory Foundation, 63 Colum. L.

_____

[7] It is to be noted also that the remaining subsections of § 10 (§ 10[*b*]-[*e*]) deal with powers of the unit owners' organization and the exercise of those powers in managing the condominium.

Rev. 989 (1963), which states, at 994, "[T]he condominium relinquishes none of the ownership benefits afforded by stock cooperatives — voice in its management, permanence of tenure, avoidance of profit to the landlord, and tax savings," and further, at 1004-1005, the declaration "includes . . . a statement in fractions of each owner's share of rights and duties with respect to the common premises. This fraction fixes permanently the unit owner's pro rata burden of the common expenses and his share in any profit or distribution of capital. *It is also the measure of his voice in the management*" (emphasis added). Berger adds the comment, at 1006, that "[e]ven if the management of the condominium were turned over to an independent body, the owners would want to reserve the power to countermand its decisions and, if necessary, its control."

Further confirmation that this interpretation — that § 10 requires that unit owners have a proportionate voting interest in the unit owners' organization — is correct is provided by c. 183A, § 21(*a*) (inserted by St. 1972, c. 709, § 3) (see 1A Sands, Sutherland Statutory Construction § 22.34 [4th ed. 1972] [provisions of an amendatory act are to be read together with the provisions of the original act]), which provides that if a condominium does not contain any unit designed for occupancy by only one family or household, or if the total floor area of those units designed for occupancy by one family or household does not exceed ten percent of the total floor area of all units in the condominium, the by-laws may contain, "notwithstanding any provisions of this chapter [,] . . . (5) [p]rovisions giving a particular unit owner or owners voting rights with respect to election of directors, trustees or members of the managing board less than, or in excess of, the voting rights which such owner or owners would otherwise have had." Certainly the assumption of this provision is that the owners are entitled to a certain voting rights interest under other provisions of this chapter; were this not the case, such an amendment would not have been necessary.[8]

---

[8] The plaintiff also argues that reading c. 183A, § 10, as requiring voting rights proportional to ownership rights puts that provision in con-

To hold, as the plaintiff urges, that § 10 requires only that unit owners have a beneficial and not a voting interest in the unit owners' organization would be contrary to both the language of the statute and the concept of a condominium. The untenability of this interpretation is illustrated by the fact that it would permit a unit owners' organization set up in the form of a corporation to be organized so as to give the unit owners only nonvoting stock in the corporation — which clearly would be contrary to the concept of the statute.

In sum, we must conclude that the provision in question here, which gives the development trust, which may own only a small percentage of the units,[9] the right to appoint

---

flict with c. 183A, §§ 17-19. The plaintiff contends that the provision here permitting the developer to appoint a majority of the trustees and the various provisions in c. 183A, §§ 17-19, requiring specific percentages of votes to approve certain actions (for example, § 17 requires a seventy-five percent vote to repair a building if more than ten percent of it has been destroyed by fire) are both systems of "weighted votes," and that one must argue either that all weighted votes are prohibited or that "only weighted voting favoring a developer who owns units" is excluded. Aside from the fact that a statutory provision for varied methods of voting on particular matters would not necessarily be contradictory, here the plaintiff is attempting to equate two different types of things. To require that one person's vote shall count as one vote, or that a percentage ownership interest entitles one to the same percentage voting interest (see G. L. c. 183A, § 1, which defines "any given 'percentage of unit owners'" as meaning "the owners of that percentage in the aggregate in interest of the undivided ownership of the common areas and facilities"), is different from, and not in conflict with, requirements that two thirds or three fourths of those votes are required to undertake certain actions. The plaintiff's power to appoint two thirds of the board even though the developer owns far less than two thirds of the units (whether measured by area or by number of units) is not equivalent to a requirement that two thirds of the votes of unit owners are necessary to elect a board member; the plaintiff's provision creates two classes of voters which are treated differently, giving the owner of less than twenty percent of the units (see note 6, *supra*) the power to elect two thirds of the board and permitting the owners of eighty to ninety percent of the units to elect only one third of the board. The difference between this provision and §§ 17-19, which require a given percentage of votes (the votes being proportional to ownership but not otherwise weighted), is obvious.

[9] See note 6, *supra*.

two of three trustees and the unit owners, who own the overwhelming majority of the units, the right to appoint but one, does not meet the requirement of § 10 that unit owners have a proportionate interest in the unit owners' organization for the management and regulation of the condominium.

It is argued, however, that because c. 183A is an enabling act it should be interpreted to permit as much flexibility as possible, and that individuals have a right to enter contracts with provisions different from those set out in the statute. The plaintiff argues in addition that the judge's ruling that the provision is enforceable for a "reasonable period of time" (which, the plaintiff states, implicitly equates "reasonable period of time" with the marketing phase of the condominium) should stand.

While it is true that c. 183A is an enabling statute and matters not specified should be left to individual parties to be worked out, it is also true that it sets out certain minimum requirements, that is, it enables or authorizes the setting up of a particular type of entity, with certain requirements specified (see, e.g., c. 183A, §§ 5 & 6) and other factors left flexible. The section in question here provides that "[e]ach unit owner *shall* have the same percentage interest in the corporation, trust or unincorporated association . . . for the management and regulation of the condominium as his proportionate interest in the common areas and facilities" (emphasis added). It is accepted statutory construction that "[u]nless the context otherwise indicates the use of the word 'shall' . . . indicates a mandatory intent." 1A Sands, Sutherland Statutory Construction § 25.04 (4th ed. 1972). Thus we conclude that this provision is mandatory and not one of those factors (such as those in § 12, where the word "may" is explicitly used) left to the discretion of the developer.

Since c. 183A, § 10, is mandatory, and since it contains no exception to the requirement set out, we would be reading an exception into the statute to hold, in the absence of statutory language, that the requirement can be waived for

a "reasonable period of time." This we cannot do. See *Harry Alan Gregg, Jr. Family Foundation, Inc.* v. *Commissioner of Corps. & Taxn.*, 330 Mass. 538, 544 (1953); *Boylston Water Dist.* v. *Tahanto Regional Sch. Dist.*, 353 Mass. 81, 84 (1967).

The judgment is reversed, and a declaratory judgment is to be entered in accordance with this opinion.

*So ordered.*

GREANEY, J. (dissenting).   I do not quarrel with that part of the majority decision which holds that G. L. c. 183A, § 10(a),[1] concerns voting rights of the individual owners in a condominium in the organization created to manage the project.   The conclusion that § 10(a) deals with voting rights is logically implicit in the statute's language.   In this respect, § 10(a) operates in congruity with §§ 5(a) and 5(b) of c. 183A,[2] to ensure the right of shared participation in the condominium's common features — a concept which is the essence of the condominium idea.

I part company with my colleagues, however, on the notion that § 10(a) necessarily prohibits the unit owners from entering into valid contracts governing the condominium's management.   General Laws c. 183A was enacted to provide a statutory basis for a form of real estate ownership

---

[1] General Laws c. 183A, §§ 1-19, were inserted by St. 1963, c. 493, § 1.

[2] "(a) Each unit owner shall be entitled to an undivided interest in the common areas and facilities in the percentage set forth in the master deed. Such percentage shall be in the approximate relation that the fair value of the unit on the date of the master deed bears to the then aggregate fair value of all the units.

"(b) The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners, expressed in an amended master deed duly recorded. The percentage of the undivided interest in the common areas and facilities shall not be separated from the unit to which it appertains, and shall be deemed to be conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument."

which had a somewhat uncertain status at common law. See Schwartz, Condominium: A Hybrid Castle in the Sky, 44 B.U. L. Rev. 137, 139-143 (1964). The act is fundamentally an enabling statute, like G. L. c. 156B, dealing with business corporations, and G. L. c. 109, pertaining to limited partnerships. Where the statute does not expressly prohibit a practice or is otherwise silent, the parties involved with the condominium are "free to determine their rights with respect to each other [and with respect to the project's future] by any . . . agreement which does not contravene public policy or run afoul of the common law." *Wasserman* v. *Wasserman*, 7 Mass. App. Ct. 167, 174 (1979). Cf. *Johnson* v. *Keith*, 368 Mass. 316, 321-322 (1975); 1 Rohan & Reskin, Condominium Law and Practice § 5.04, at 26-27 (1980). No contention has been made that the trust provisions under study were the product of unfair or deceptive conduct or impermissible overreaching on the developer's part. Nor is it argued that the trust's provisions, apart from the perceived conflict with § 10(*a*), violate any rule of law or policy. The fact that the developer maintained a substantial stake in the condominium's future is settled by the judge's findings (based on competent evidence) that "twenty-three . . . commercial units [remain] unsold [and] the . . . [c]ondominium [is] still in the marketing phase." Furthermore, the existence of the trust and its terms were made known to all who bought condominium units, and the sales and closing documents included acceptance of the management provisions enumerated in the trust. The fact that sales of commercial units have been slower than expected, or that common expenses have increased, will not support rescission of an otherwise valid trust indenture. See *Point East Management Corp.* v. *Point East One Condominium Corp.*, 282 So.2d 628, 629-630 (Fla. 1973), cert. denied, 415 U.S. 921 (1974). The trust does not divest the other owners to any material or substantial degree of any rights or privileges conferred by c. 183A.

In this framework, the majority fail to differentiate between the concepts of ownership and management and incorrectly assumes from the statute's requirement that the unit owners "shall" have certain percentage interests in the owners' organization that they must have a precisely corresponding interest in management. Section 10(*a*) does not so provide. There is evidence in the legislative history that the Legislature was aware of voting rights when it enacted § 10(*a*),[3] but purposely chose to leave the matter to discretionary agreement among the owners and the developer. This made good sense since condominiums differ significantly from one another and it makes especially good sense in this case since the Vendome is the first mixed use condominium in the Boston area. Thus the majority has written a new provision into § 10(*a*) which effectively precludes condominium owners from contracting for the contingencies that affect the condominium's management. I suggest that

---

[3] Chapter 183A was introduced as 1963 House Doc. No. 1708 ("House 1708"). Sections 6(*a*) and 6(*b*) of House 1708 expressed the concept of percentage interests as the vehicle for shared ownership in the condominium; these sections were included in c. 183A as §§ 5(*a*) and 5(*b*), essentially without alteration. Under §§ 2(*d*) and 19 of House 1708 the condominium would be administered by an unincorporated association whose by-laws were to be recorded as part of the declaration. This bill went some distance to provide a structure for that association with particular reference to voting. Section 2(*k*) defined a majority for voting purposes as constituting "apartment owners with fifty-one percent or more of the votes in accordance with the percentages assigned in the declaration," while § 19 provided for election of a board of managers, mandated a majority of owners as a quorum (but only if the by-laws did not provide otherwise), and provided for election of officers. 1963 House Doc. No. 3324 became c. 183A. The provisions of House 1708 dealing with the voting rights and the specific structure of the owners' organization were deleted and § 10(*a*) was added in their place. Use of a corporate or trust form for the owners' organization was approved along with the unincorporated association form introduced by House 1708. The Legislature refrained from including any specific language as to voting rights within the unit owners' organization while retaining certain other voting concepts set forth in House 1708. Compare §§ 5(*g*), 17(*b*) and 19(*a*) of G. L. c. 183A with the counterpart provisions in §§ 8, 11(9) and 16(*a*) of House 1708. I think the Legislature by these changes intended to avoid inflexible requirements as to the internal structure of the owners' organization.

this result, if intended by the Legislature as a matter of policy, would have been clearly expressed in § 10(*a*).

Finally, I am concerned about the effect of the holding on existing condominiums. General Laws c. 183A is a primitive, first generation condominium statute[4] primarily designed to govern residential condominiums. Its draftsmen probably did not anticipate phased condominiums, mixed use condominiums, commercial condominiums, or any of the other mutations which creative real estate lawyers have contrived. Lawyers, mortgagees, lienholders, developers, unit owners and others involved with second generation condominiums have considered c. 183A as affording a measure of flexibility with respect to the condominium's creation and development and have tailored sophisticated condominium documents to work out the equitable interests of the parties on a host of issues including management. I suspect that the validity of many of these agreements will now be thrown into question and that many people who relied on the statute will soon find their peace and confidence disrupted by unwarranted litigation.

I would affirm the judgment entered in the Superior Court,[5] and apply § 10(*a*) to determine voting interests only in those cases where the condominium's documents are silent on the question of control.

---

[4] The statute was enacted in 1963 and was patterned on the Federal Housing Administration's Model Condominium Act which had proved to be a popular model for what was at the time a novel concept of ownership. Most of its salient provisions, including § 10(*a*), have not been amended since 1963. The statute's somewhat general approach to the question of control can be usefully contrasted with the more sophisticated dispositions suggested in later statutes. See, for example, Uniform Condominium Act, 7 U.L.A. § 3-103, at 165-167 (Master ed. 1978).

[5] The judge's ruling that the disputed provisions of the trust are enforceable for a reasonable length of time was not made part of the judgment which simply enjoins the defendants from exercising any powers as trustees. I think that ruling was incorrect but since it was not included in the judgment it need not be dealt with at this time.