Carmine A. Ventiera. J.
Plaintiff landlord in this action for a declaratory judgment which would exclude the defendant tenant from the protection of the rent control law solely because such tenant may be characterized as a “ wealthy person ” moves under CPLB 3212 for summary judgment, and further seeks to dismiss the defendant’s counterclaim for money damages allegedly sustained because of the institution of the instant action by plaintiff. Defendant tenant opposes the instant motion and similarly seeks summary judgment dismissing the complaint and for judgment on his counterclaim.
By order of this court dated December 11, 1967, the City Commissioner of Rent and Housing Maintenance (successor to the City Rent and Rehabilitation Administrator) was granted leave to intervene in this action, thereafter accordingly served his answer and now too cross-moves to dismiss plaintiff’s complaint pursuant to CPLR 3212 on the ground that no triable issues exist and that the complaint fails to state a cause of action.
*1028 The defendant tenant it is undisputed has since 1936 been the occupant of Apartment E-2 in the subject rent-controlled multiple dwelling which accommodates 48 families, and pays the present established maximum rent of $113.72.
Stripped of all its embellishments, plaintiff’s complaint proposes and urges the court to interpret the rent control statute so that it would be applicable only• to those tenants who are not or may not be considered as possessing financial wealth, or failing to achieve this result, seeks in the alternative a judgment that the subject statute is unconstituional since it protects ‘ ‘ wealthy ’ ’ tenants such as this defendant is characterized and classified to be by the plaintiff.
The impetus of this novel proposition exemplifying plaintiff’s posture is reduced by the fact that the constitutionality of .the rent control statutes and its regulations is well settled (Amsterdam-Manhattan, Inc. v. City Rent & Rehabilitation Administration, 43 Misc 2d 889, affd. 21 A D 2d 965, affd. 15 N Y 2d 1014).
It appears conceded that plaintiff has no cause under the rent statutes or its rules and regulations to oust the defendant tenant from the occupancy and possession of the housing accommodation wherein he resides. Thus it is obvious that the plaintiff landlord being unable to remove the defendant tenant because of the protective cloak in the form of the rent control law and regulations, plaintiff by the instant action attempts to circumvent, evade or by-pass the statute which interestingly enough, movant concedes has been declared constitutional. Yet in spite of the latter admission, plaintiff projects the theory that as to this defendant tenant, the rent legislation should be declared unconstitutional by reason of the tenant’s undenied financial well-being. In further support of his posture, plaintiff alleges that this defendant is occupying the subject apartment “without any rental agreement with the .said owners ”, Obviously this defendant is no trespasser for when he first rented the apartment there was beyond question, a privity of contract established between the landlord and himself. Whether such meeting of the minds in 1936 was expressed orally or in writing is not .shown in the submitted papers. However, the continuous undisturbed occupancy over the years indicates that an amicable relationship prevailed between the subject parties, and when the rent control legislation became effective, the defendant became a statutory tenant enjoying the benefits and protection thereof, so long as he in turn did not default in his rent payments or otherwise violate a substantial obligation *1029 of his tenancy (Administrative Code of City of New York, § Y51-6.0).
In the court’s view the sole issue presented is whether the rent control law and regulations can be exercised in such a manner as to make it inoperative or inapplicable to a “ class ”, in this instance the group or class being “wealthy tenants ” who occupy apartments in rent-controlled buildings. “ Wealth ” per se is no criterion to determine a tenant’s right to occupy a rent-controlled (housing accommodation; similarly neither is wealth ,a criterion to that class who are the beneficiaries of our social security and medicare system. Succinctly put, tenants drawn on the basis of wealth or ownership of property, like those of race, are traditionally disfavored (Harper v. Virginia Bd. of Elections, 383 U. S. 663, 668; cited in Landes v. Town of North Hempstead, 20 N Y 2d 417, 420). Here plaintiff urges the court, contra to the rent statute and legislative intent, to discriminate between “ the haves ” and “ the have-nots ” which in effect would be violative of both Federal and State Constitutions (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11) requiring that there be no discrimination within the category, and the classification adopted must itself, “‘rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed.’ (Myer v. Myer, 271 App. Div. 465, 472, affd. 296 N. Y. 979; see, also, Matter of Ellis v. Allen, 4 A D 2d 343 344, app. dsmd. 4 N Y 2d 693, mot. for lv. to app. den. 4 N Y 2d 674).” (Matter of Madole v. Barnes, 20 N Y 2d 169, 173.) Here we deal with statutory tenants, who under the mandated statutes must be treated the same irrespective of their wealth or other characteristics. “ The essence of the right to equal protection of the laws is that all persons similarly situated be treated alike.” (Myer v. Myer, supra, p. 472; emphasis supplied.)
The plaintiff has failed to establish that the rent control law makes distinction between wealthy and nonwealthy tenants. Therefore, it. is clear that the statute affords equal protection to all who come within the bounds of controlled housing. The public policy of the State and city when the Legislature acts, is what its Legislature, as here, says it shall be. (Demarest v. Flack, 128 N. Y. 205). As stated in Williams v. Mayor (289 U. S. 36, 42): “ It is not the function of a court to determine whether the public policy that finds expression in legislation of this order is well or ill conceived. [Citing cases.] The judicial function is exhausted with the discovery that the relation between means and end is not wholly vain and fanciful, an illusory pretense. Within the field where men of reason may *1030 reasonably differ, the legislature must have its way.” That emergency legislation is ‘ ‘ not to be extended beyond the evil sought to be curbed ”, is well established (People ex rel. McGoldrick v. Regency Park, 201 Misc. 109, 111, affd. 280 App. Div. 804, affd. 305 N. Y. 650). The court is satisfied that the subject emergency still exists.
Gleaned from the intervenor-defendant’s submitted papers is the factual showing fortified by the exhibits annexed, that upon the report of the Committee on General Welfare of the City Council which was ‘ ‘ based upon a survey, and extensive public hearings, that their [sic] continues to be a shortage of housing in the City of New York requiring the continuation of rent controls * # * [resulting in the 'Council’s passage of a resolution on March 21,1967 which appeared in the City Record, March 23, 1967, pp. 1919 and 1927] which officially and legislatively found the necessity for continuing rent controls ”. If the rent control law is to be amended, it should be by legislation and not by judicial construction. This procedure should be well known to plaintiff’s counsel, especially «11106 he admits to have ‘ ‘ had long involvement in virtually all phases of rent control, almost from the outset in 1943 and particularly with respect to litigating many aspects of the rent control laws as they were challenged in the courts over these past 20 years.” Thus he should be fully cognizant of the fact that the relief he seeks for his client may not be obtained through the courts, but needs to be taken elsewhere, that is to the legislative body. Further, the court adheres to the declaration in 'subdivision a of section Y51-1.0 of the Administrative 'Code of the City of New York which, as here pertinent, states: “The council hereby finds that a serious public emergency continues to exist in the housing of a considerable number of persons in the city * * * that the transition from regulation to a normal market of free bargaining between the landlord and tenant, while still the objective of state and city policy, must be administered with due regard for such emergency; that in order to prevent uncertainty, hardship and dislocation, the provisions of this title are declared to be necessary and designed to protect the public health, safety and general welfare.”
Accordingly, the motions to dismiss plaintiff’s complaint for failing to ¡state a cause of action, are granted. As to the defendant’s counterclaim, the rent control statutes, etc. are devoid of any reference or specification which grants a statutory tenant the right to sue his landlord for damages for the reasons alleged therein. The defendant asserts that he has “interposed a counterclaim for abuse of process * * that *1031 counterclaim has been seriously interposed because I believe that the plaintiff has chosen to institute this action against me solely for the purpose of harassment by reason of my activities in requiring him to comply with the City Bent Law and other applicable legislation.” As stated by Desmond, J., in Rosner v. Textile Binding & Trimming Co. (300 N. Y. 319, 322-323): “ Special Term held that plaintiffs had only the rights expressly granted by the statute, and that such rights did not include a right to damages, on the facts shown by this complaint. We agree with that holding.” In the court’s opinion no justiciable cause of action is set forth in defendant’s counterclaim. Therefore, plaintiff’s motion to dismiss such counterclaim is granted.