397 So.2d 297 (1980)
JUNO BY THE SEA NORTH CONDOMINIUM ASSOCIATION (THE TOWERS), INC., Appellant,
v.
Seraphin MANFREDONIA, Charles Youngblood and Jeanett Youngblood, Appellees.
No. 78-1359.
District Court of Appeal of Florida, Fourth District.
June 25, 1980.
On Rehearing January 21, 1981.
Timothy J. Hmielewski of Nason, Gildan, Yeager & Lubin, P.A., West Palm Beach, for appellant.
Raymond G. Ingalsbe of Saylor, Ingalsbe & Cohen, North Palm Beach, for appellees.
DOWNEY, Judge.
This case arose out of a controversy between several condominium unit owners and the condominium association precipitated by passage of a rule assigning parking spaces to certain unit owners. From a declaratory judgment in favor of the unit owners the Condominium Association has perfected this plenary appeal.
The case was presented to the trial court upon a stipulation of facts which in pertinent part reflects that Juno By The Sea North Condominium is a seventy unit condominium located on the east, or ocean, side of Highway AIA in Juno Beach, Florida. The condominium documents provide for three separate parking areas:
A) There are 20 covered spaces, which are limited common elements and which were sold to unit owners for $2,000.00 each on a first-come, first-serve basis.
B) There are 50 spaces located within the common elements on the east side of AIA directly adjacent to the Condominium building.
C) There are 27 spaces within the common elements which are located on the west side of AIA, across the street from the Condominium building.
*298 When all of the Condominium units were sold and there were an insufficient number of parking spaces in parking lot B adjacent to the Condominium building, the Board of Directors passed a rule assigning one parking space to each unit owner who did not already own one of the twenty covered spaces located in the limited common elements. Appellees then filed suit for declaratory relief contending that the Board of Directors did not have the authority to pass the rule in question assigning all of the fifty spaces in parking Lot B, a common element, to less than all of the seventy unit owners. The trial court entered judgment for the appellees, declaring the action of the Board of Directors to be void and enjoining the Board from excluding any unit owners from enjoying the use of parking Lot B.
Appellant contends that the Condominium Act, Chapter 711, Florida Statutes (1975) (now Chapter 718, Florida Statutes), and the Declaration of Condominium authorized the Board of Directors of Juno By The Sea North Condominium to pass reasonable rules regulating the use of the common elements of the Condominium. Besides the authority contained in the Condominium Act, appellant points out that prior to the purchase of any of the units in this Condominium building Condominium Association Rule V was in effect, which provided:
Automobiles are a necessity in our modern way of living, but unfortunately, take up considerable valuable space. Parking is allocated to individual owners of our condominium family, and we urge your continued cooperation in strict recognition of the space assignments made by the Association or Developer. Do not, even on a momentary basis, park in someone else's space and inform your guests and visitors not to preempt one of your neighbor's alloted (sic) spaces.
We would concede that Condominium Associations in general and appellant in particular, through their Boards of Directors, have the authority to pass reasonable rules and regulations pertaining to the common elements of the Condominium. However, as we see it, the reasonableness of the rule adopted by the Directors of the Association is not the focal issue involved in this litigation. The issue rather is one of power and authority. If the Board of Directors had the power to designate certain portions of the common elements for the exclusive use of less than all of the unit owners, then it must be conceded that the method of assignment is logical and reasonable. If, on the other hand, the Board lacks the authority, the power, to so dispose of a portion of the common elements, then all the logic and reason in the world will not cure that lack of capacity to promulgate such a rule.
Parking is no doubt an essential part of living in a condominium community. If there were sufficient parking spaces in Lot B, a common element, to furnish a parking space for each unit owner, the Board could, Pursuant to its rule making power, assign parking spaces. And certainly the Board can set out reasonable rules and regulations concerning the size of the spaces, speed limits in the parking lot and other rules necessary to maintain order and safety in the area. But the evil involved in the present case is that Lot B is not large enough to afford a parking space for all seventy unit owners and so the Board has chosen some unit owners, but not all, for this preferential assignment.[1] It is true the Board did not act as it did without rhyme or reason; the Board assigned the fifty parking spaces in Lot B (a common element) to the unit owners who had not bought one of *299 the twenty covered parking spaces in Lot A (limited common element). But it does not suffice to say that the twenty unit owners excluded from the preferential assignment in Lot B already have one covered space in Lot A. The unit owners who have covered parking spaces in Lot A purchased those spaces for $2,000 each; they could purchase those spaces because, pursuant to the Declaration of Condominium, those spaces were limited common elements. If the Declaration did not designate Lot A as a limited common element area, the purchase of said covered spaces in Lot A would have been invalid.
The trial judge noted that the Board's assignment methodology might be just or logical, but he found an absence of authority for the Board to make the preferential assignments in question. We are persuaded to agree with the trial judge and thus affirm the judgment appealed from.
AFFIRMED.
DAUKSCH, JAMES C., Jr., Associate Judge, concurs.
ANSTEAD, Judge, dissents with opinion.
ANSTEAD, Judge, dissenting:
By its holding today the majority has ruled that a condominium association does not have the "power and authority" to assign individual spaces in a common element parking lot. At the same time the majority has held that if there were enough spaces for everyone in parking lot B, the association would have the authority to do so. The majority first states the issue is one of "power and authority" rather than "reasonableness" but proceeds to decide the issue because it finds the assignment plan to be unreasonable; i.e., preferential to those unit owners who do not own a covered parking space. I cannot agree with the "reasonableness" of the majority's opinion and therefore dissent.
The appellant relies on the power conferred upon it by Section 711.12, Florida Statutes (1975) and the declaration of condominium to maintain, manage, and operate the condominium property, which specifically includes both common elements and limited common elements, as its source of authority to assign parking spaces in the 50 space lot. I agree.
By express terms in the statute and in the declaration the association has been granted broad authority to regulate the use of both the common element and limited common element property. In general, that power may be exercised as long as the exercise is reasonable and does not exceed any specific limitations set out in the statutes or condominium documents. For instance here, although the association has the authority to regulate the use of limited common elements, it would have no authority to assign the use of the covered parking spaces because those spaces have been specifically designated in the Declaration of Condominium as appurtenances of individual units and subject to exclusive use by owners of those units. However, no such restrictions exist as to the 50 space parking lot.
The appellees contend that the appellant association violated Section 711.13(2), Florida Statutes (1975) which prohibits material alterations of the common elements except in a manner provided in the declaration. The appellees assert that the association's action improperly converted and materially altered the 50 common element spaces into limited common elements for the benefit of only 50 out of the 70 unit owners. The majority opinion does not indicate whether it agrees with this view.
Limited common elements as defined by Sections 711.03(13) and 711.04(2), Florida Statutes (1975) are not only elements reserved for the use of a certain unit but such elements become an appurtenance of the unit and pass with the unit when legal title is conveyed. Here, the 50 parking spaces, unlike the 20 covered spaces, have not been converted into limited common elements since they will not pass as appurtenances to individual units but will remain common elements subject to continuing regulation by the association. Moreover, I do not believe that by assigning individual spaces in a common element parking lot the association *300 is materially altering those common elements. There is no dispute here about the propriety of using the common elements as a parking lot. Surely some regulation of the parking areas would be necessary even if there was an excess of parking spaces in the lot.[1] Even the majority opinion concedes that spaces could be assigned in Lot B if there were enough spaces therein for all the unit owners.
Parking spaces, by their very nature, are exclusive; i.e., only one vehicle can be parked in a space at a time.[2] By necessity the 50 spaces are going to be used "exclusively" by 50 out of 70 of the unit owners at any given time. In other words 20 of the unit owners will always be excluded from use of the 50 spaces no matter what regulations are enacted. Surely one of the reasons that the "open parking" plan attempted briefly proved unworkable was because many unit owners found themselves completely excluded from any convenient parking.
In Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180 (Fla. 4th DCA 1975) we adopted a test of reasonableness to determine the validity of association regulations. In that case we held that an association could ban the use of alcohol on common element property. Judge Downey stated for the court:
It appears to us that inherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization. The Declaration of Condominium involved herein is replete with examples of the curtailment of individual rights usually associated with the private ownership of property. It provides, for example, that no sale may be effectuated without approval; no minors may be permanent residents; no pets are allowed. Certainly, the association is not at liberty to adopt arbitrary or capricious rules bearing no relationship to the health, happiness and enjoyment of life of the various unit owners. On the contrary, we believe the test is reasonableness. If a rule is reasonable the association can adopt it; if not, it cannot. It is not necessary that conduct be so offensive as to constitute a nuisance in order to justify regulation thereof. Of course, this means that each case must be considered upon the peculiar facts and circumstances thereto appertaining. Id. at 181, 182.
I simply cannot agree that an association has the "inherent authority" to absolutely bar alcoholic beverages from the common element premises but at the same time, lacks any authority to adopt a reasonable plan of assignment of parking spaces.
I believe the regulation challenged herein is reasonable and makes eminent good sense. Upon construction of Juno by the Sea, there were 70 parking spaces provided to unit owners in the immediate area of the condominium building. For an extra $2,000.00 each, 20 unit owners were able to secure the best of these 70 spaces; i.e., 20 covered spaces in the basement of the condominium building. Under the regulation, the remaining 50 unit owners, by virtue of either purchasing their units too late, or by choice, were left with parking in open parking spaces immediately outside the building. Additionally, 27 "spare" parking spaces located across the street were available to all *301 the unit owners.[3] Accordingly, I do not think it was improper for the association, in devising an assignment plan, to consider, among other factors, the fact that 20 unit owners had already secured convenient, exclusive parking spaces within the condominium building. As noted, supra, the appellant was vested with the authority of regulating the use of the limited common elements; i.e., the covered spaces, as well as the common elements; i.e., the open parking. In addition, although not noted in the majority opinion, the expense of maintenance of the covered spaces as well as the open spaces is borne by the association.[4] Under all these circumstances I believe this plan not only makes good sense, but appears to be the only reasonable alternative, short of total chaos, open to the association.[5]
It is also important to note that we are not faced with a situation where the prospective unit owners were without notice of the assignment of parking spaces. Point East Management Corporation v. Point East One Condominium Corporation, Inc., 282 So.2d 628 (Fla. 1973). Rule V of the association's rules and regulations, quoted in the majority opinion, put unit owners on notice that parking spaces would be assigned first by the developer and then by the association to individual unit owners.
As noted in Hidden Harbour, supra, "each case must be considered upon the peculiar facts and circumstances thereto appertaining." I believe that under the peculiar facts of this case the regulation was reasonable and within the authority of the association and that our decision today is in direct conflict with our previous holding in Hidden Harbour.

ON PETITION FOR REHEARING
ANSTEAD, Judge.
By this appeal we are presented with another unique problem that has arisen within a condominium community. At issue is whether a condominium association, acting through its board of directors, has the authority to assign individual parking spaces for the exclusive use of individual unit owners.
Juno by the Sea North is a condominium building comprised of 70 units located on the east side of Highway A1A in Juno Beach, Florida. There are three parking areas used by the condominium occupants: a covered parking area located in the basement of the condominium building consisting of 20 spaces; an outside parking area directly adjacent to the building consisting of 50 spaces; and an area opposite the condominium building on the west side of A1A consisting of 27 spaces.
By specific provision in the Declaration of Condominium, the 20 covered parking spaces were designated as limited common elements; i.e., elements exclusively reserved for the use of a certain unit,[1] which were assigned to individual unit owners for $2,000.00 each on a first-come first-serve basis. Thereafter, the developer, and subsequently, the condominium association, assigned the 50 parking spaces adjacent to the building to other unit owners who had not purchased covered parking. The association is responsible for the cost of maintenance of all three parking areas. The parties agree that the two open parking lots were designated in the Declaration as common elements, but, unlike the covered parking, were not specifically designated as limited common elements.
*302 At the time of purchase each unit owner at Juno by the Sea acknowledged that he was subject to the provisions of the various condominium documents including the association rules and regulations. Prior to the time any units were sold, Rules and Regulations of the condominium association had been adopted[2] and Rule V thereof provided:
Automobiles are a necessity in our modern way of living, but unfortunately, take up considerable valuable space. Parking is allocated to individual owners of our condominium family, and we urge your continued cooperation in strict recognition of the space assignments made by the Association or Developer. Do not, even on a momentary basis, park in someone else's space and inform your guests and visitors not to preempt one of your neighbor's allotted spaces.
For a short interval the association allowed "open parking" in the 50 space lot but that created such a controversial situation, according to the appellees, that the association promptly reenacted the rule assigning spaces in the 50 space lot to those unit owners who had not acquired covered parking spaces. This action followed. In entering judgment for the appellees the trial court noted that the regulation appeared "logical" and "just" but held that the association had exceeded its authority.
On appeal, the appellant relies on the power conferred upon it by Section 711.12, Florida Statutes (1975) and the Declaration of Condominium, to maintain, manage, and operate the condominium property, which specifically includes both common elements and limited common elements, as its source of authority to assign parking spaces in the 50 space lot. We agree.
By express terms in the statute and in the declaration the association has been granted broad authority to regulate the use of both the common element and limited common element property. In general, that power may be exercised as long as the exercise is reasonable, is not violative of any constitutional restrictions, and does not exceed any specific limitations set out in the statutes or condominium documents. For instance here, although the association has the authority to regulate the use of limited common elements, it would have no authority to assign the use of the covered parking spaces because those spaces have been specifically designated in the Declaration of Condominium as appurtenances of individual units and subject to exclusive use by owners of those units. However, no such restrictions exist as to the 50 space parking lot.
The appellees assert that the association's action improperly converted the common element spaces into limited common elements. It is contended that the assignment plan adopted by the appellant association violated Section 711.13(2), Florida Statutes (1975) which prohibits material alterations of the common elements except in a manner provided in the declaration. In this regard appellees rely on Mayfair Engineering Co. v. Park, 318 So.2d 171 (Fla. 4th DCA 1975). In Mayfair we held that a developer, by virtue of a specific reservation in the Declaration of Condominium, had retained the authority to assign the exclusive use of certain parking spaces in the condominium. Judge Owen, writing for the court, noted that the Declaration, in effect, converted all of the parking spaces in the condominium into limited common elements since it not only provided for the developer's right to assign exclusive use of some of the spaces, it also provided that all unit owners would receive one space for exclusive use. However, contrary to appellees' contention, we did not consider in Mayfair, supra, the extent of a condominium association's authority to regulate the use of common element parking spaces.
We also note that limited common elements as defined by Sections 711.03(13) and 711.04(2), Florida Statutes (1975) are not only elements reserved for the use of a *303 certain unit but such elements become an appurtenance of the unit and pass with the unit when legal title is conveyed. Here, the 50 parking spaces, unlike the 20 covered spaces, have not been converted into limited common elements since they will not pass as appurtenances to individual units but will remain common elements subject to continuing regulation by the association.
Moreover, we do not believe that by assigning individual spaces in a common element parking lot the association is "materially altering" those common elements. The common element parking lot involved continues to be used as a parking lot for the benefit of the unit owners. If appellees' argument were accepted there could be no assigned spaces even if there were 70 instead of 50 spaces in the lot adjacent to the building.[3] Surely some regulation of the parking areas would be necessary even if there was an excess of parking spaces in the lot.
Parking spaces, by their very nature, are exclusive; i.e., only one vehicle can be parked in a space at a time.[4] By necessity the 50 spaces are going to be used "exclusively" by 50 out of 70 of the unit owners at any given time. In other words 20 of the unit owners will always be excluded from use of the 50 spaces no matter what regulations are enacted. Surely one of the reasons that the "open parking" plan attempted briefly proved unworkable was because many unit owners found themselves completely excluded from any convenient parking. Hence, we conclude that the association did have the authority to assign individual parking spaces in the common element parking lots set aside for the use of the unit owners.
In our view, the real issue presented by appellees is not that the association lacked the authority to assign individual parking spaces but rather that this particular plan of assignment is unreasonable and discriminatory because it excludes certain unit owners from the 50 space lot; i.e., the unit owners who own covered parking spaces. In Hidden Harbour Estates Inc. v. Norman, 309 So.2d 180 (Fla. 4th DCA 1975) we adopted a test of reasonableness[5] to determine the validity of association regulations:
It appears to us that inherent in the condominium concept is the priciple that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization. The Declaration of Condominium involved herein is replete with examples of the curtailment of individual rights usually associated with the private ownership of property. It provides, for example that no sale may be effectuated without approval; no minors may be permanent residents; no pets are allowed. Certainly, the association is not at liberty to adopt arbitrary or capricious rules bearing no relationship to the health, happiness and enjoyment of life of the various unit owners. On the *304 contrary, we believe the test is reasonableness. If a rule is reasonable the association can adopt it; if not, it cannot. It is not necessary that conduct be so offensive as to constitute a nuisance in order to justify regulation thereof. Of course, this means that each case must be considered upon the peculiar facts and circumstances thereto appertaining. Id. at 181, 182.
First, we note that we are not faced with a situation where the prospective unit owners were completely without notice of the assignment of parking spaces. Point East Management Corporation v. Point East One Condominium Corporation, Inc., 282 So.2d 628 (Fla. 1973). We believe Rule V of the association's rules and regulations, while awkwardly drawn, still put unit owners on notice that parking spaces would be assigned first by the developer and then by the association to individual unit owners. Indeed, that was done from the beginning.
Further, under the circumstances of this case we find no unlawful discrimination. Limited common elements are owned and maintained by all of the unit owners as part of the common elements but the use thereof is exclusively limited to individual unit owners. These limited common elements usually consist of elements such as parking spaces, balconies, patios or other such property which the unit owners use individually but in which they share a common interest in maintaining. For instance, to insure the uniform quality of appearance of all the exterior balconies, they might be designated as limited common elements for the exclusive use of the unit owner but subject to maintenance by all the unit owners through the condominium association. Invariably in such cases, however, every unit owner has the exclusive use of a similar item. Otherwise, it would be unfair for the owner of one unit that does not have a balcony to help pay for the maintenance of a balcony used exclusively by another unit owner.
It is because we have a variation from the usual scheme of limited common elements that the problem arises herein. Instead of all having covered parking spaces, there are only enough spaces for 20 unit owners. And yet, all of the unit owners pay for the maintenance of the covered spaces. It is true of course that the covered spaces are designated limited common elements and that the 20 unit owners involved paid extra consideration of $2,000.00 each for the use of these spaces. However, this does not justify burdening the other unit owners with the cost of maintaining these spaces. In our view the only way such an arrangement can be upheld is if the remaining 50 unit owners are also assured of the use of exclusive parking space maintained by all of the unit owners. And the rule under attack here does just that in an eminently reasonable manner. Under the rule each unit owner has the exclusive use of a parking space and shares equally with his neighbor in the maintenance of that space. The rule does not unfairly discriminate.
We believe the regulation challenged herein is not only fair but makes good sense. Upon construction of Juno by the Sea, there were 70 parking spaces provided to unit owners in the immediate area of the condominium building. For an extra $2,000 each, 20 unit owners were able to secure the best of these 70 spaces; i.e., 20 covered spaces in the basement of the condominium building. Under the regulation, the remaining 50 unit owners, by virtue of either purchasing their units too late, or by choice, were left with parking in open parking spaces immediately outside the building. Additionally, 27 "spare" parking spaces located across the street were available to all the unit owners.
Accordingly, we do not think it was improper for the association, in devising an assignment plan, to consider, among other factors, the fact that 20 unit owners had already secured convenient, exclusive parking spaces within the condominium building. As noted, supra, the appellant was vested with the authority of regulating the use of the limited common elements; i.e., the covered spaces, as well as the common elements; i.e., the open parking. In addition, the expense of maintenance of the covered spaces as well as the open spaces is *305 borne by the association. Under all these circumstances we believe this plan not only makes good sense, but appears to be the only reasonable alternative, short of total chaos, open to the association.[6] As noted in Hidden Harbour, supra, "each case must be considered upon the peculiar facts and circumstances thereto appertaining." We believe that under the peculiar facts of this case the regulation was reasonable and within the authority of the association.
The appellant's petition for rehearing is granted and the judgment of the trial court is reversed with directions for further proceedings consistent herewith.
DOWNEY, J., and DAUKSCH, JAMES C., Jr., Associate Judge, concur.
NOTES
[1] Appellee analogizes the preferential assignment here to action by the Board of Directors in assigning another part of the common elements, the swimming pool, to some of the unit owners to the exclusion of others. Assuming some logical reason could be conjured up for such action, would anyone seriously contend that the Board of Directors of this condominium had any such power or authority? Perhaps a more telling analogy would be a situation in which a small group of unit owners purchased a lot abutting the condominium property to use as their exclusive parking lot. Since the Association had insufficient spaces in Lot B for everyone, the Association might by rule assign the spaces in Lot B to other unit owners and exclude the owners of the private lot. One can not deny there is a rational basis for such action, but it nevertheless seems to lack constitutional acceptability.
[1] In fact, of course, there are a total of 77 common element parking spaces when you consider the open lot across the street as well as the lot next to the building, so there are an excess of parking spaces here.
[2] Unlike a swimming pool.
[3] The owners of the covered parking spaces may be entitled to a space in the lot across the street, but that issue is not before us.
[4] Unlike the private parking lot described in footnote 1 of the majority opinion which presumably would be maintained only at the expense of those who purchased it.
[5] Agreement of 75% of the unit owners is required in order to amend the Declaration of Condominium. In addition, the Declaration provides that no amendment may alter a unit owner's share in the common elements without his express consent. Hence, agreement of all 70 unit owners would have to be obtained if in fact an owner's share in the common elements was being altered by the assignment of parking spaces.
[1] § 711.03(13), Fla. Stat. (1975) defines limited common elements.
[2] The existing association rules, including Rule V, were attached to the Declaration and expressly made a part thereof.
[3] In fact, of course, there are a total of 77 common element parking spaces when you consider the open lot across the street as well as the lot next to the building.
[4] Unlike a swimming pool and some other common elements.
[5] By our decision in Hidden Harbour Estates Inc. v. Norman, supra, we did not hold that an association has the authority to enact any reasonable regulations. The regulations must be within the legal powers properly granted to the association and not contravene the legal rights of others. For instance, the association has little authority over the individual condominium units and presumably could not enact a regulation requiring the interior of each unit to be cleaned weekly by an association retained cleaning service, even though such a regulation might appear eminently reasonable; i.e., it may provide the best service to all the units at the cheapest cost. Each homeowner is still free to maintain the interior of his own apartment.
[6] Agreement of 75% of the unit owners is required in order to amend the Declaration of Condominium. In addition, the Declaration provides that no amendment may alter a unit owner's share in the common elements without his express consent. Hence, agreement of all 70 unit owners would have to be obtained if in fact an owner's share in the common elements was being altered by the assignment of parking spaces.