OPINION OF THE COURT
David B. Saxe, J.
Co-operative shareholders are expected to co-operate in matters concerning the operation and maintenance of their dwelling, but co-operation should not be exacted through oppressive, unfair or unreasonable rules or regulations. Rulemaking in a condominium or co-operative involves, however, the subordination of certain ownership rights and privileges. (See, generally, Note, Judicial Review of Condominium Rulemaking, 94 Harv L Rev 647; Ryan v Baptiste, 565 SW2d 196 [Mo]; see, also, Hidden Harbour Estates v Norman, 309 So 2d 180, 181-182 [Fla].)
The issue that I must resolve in this matter submitted to me on a stipulated set of facts is whether a co-op resolution that provides for the establishment of a housing safety patrol to be paid for through a monthly rental increase, assessed equally against each apartment, or alternatively, through personal service, by individual co-operators, is valid.
The petitioner, the Garrison Apartments, Inc. (Garrison), a co-operative housing corporation, founded in 1929, is one of the oldest housing co-operatives in the City of New *675 York. The co-op in question is a 29-unit building located at 435 Convent Avenue in Manhattan and has been owned and self-managed by its tenant shareholders since 1929.
The parties have stipulated to the following facts. The respondent is a shareholder resident and has lived at apartment No. 4 pursuant to a proprietary lease dated January 16, 1970. The petitioner has demanded rent of $218 per month, while the respondent has tendered rent of $193 per month. The difference of $25 per month represents a charge imposed equally against each apartment lessee, as a result of a resolution (the Resolution) adopted by the petitioner on April 27, 1981 pursuant to its certificate of incorporation and by-laws.
The Resolution relates to a volunteer tenant patrol. It states “that the cost of the hall patrol in the sum of $725.00 per month or $25.00 per apartment per month be added to the present rent and shall be collectible as such beginning July 1,1981.” The Resolution provides that “instead of the payment * * * each tenant-stockholder may either personally or by an approved substitute, serve or provide hall patrol service two hours each week.” The volunteer tenant patrol requires the tenant, or his designated substitute, to sit at or near the front door of the co-operative premises for two hours each week during each month. The co-operative does not hire security personnel during uncovered time slots that presently exist in the volunteer patrol schedule. The respondent (and 11 other tenant shareholders, sometimes referred to as “The Concerned Stockholders”) is either unwilling or unable to participate in the security patrol and has refused to pay the $25 charge included in his monthly rent pursuant to the Resolution.
The stipulated set of facts is submitted in connection with a motion and cross motion for summary judgment made in this nonpayment proceeding brought against the respondent Sabourin.
Essentially, the respondent argues that the payment of the additional $25 per month is a penalty exacted for failure to serve on a tenant patrol; that the “volunteer” patrol is far from voluntary but instead a constitutionally impermissible form of involuntary servitude. Finally, it is contended that the forced service may constitute age dis *676 crimination under the Human Rights Law (Executive Law, art 15).
I concur in respondent’s position that the Resolution of April 27, 1981 is invalid, but only for procedural reasons.
It is undisputed that the board of directors of the cooperative has the power to manage and operate the cooperative and, to that end, the directors may adopt rules and regulations necessary to carry out the purposes of the co-operative, to provide for the care, cleanliness, safety, and general good order of the building.
The grant of powers to the board of directors to adopt the resolution under consideration is derived in part from the proprietary lease each shareholder enters into with the corporation, the articles of incorporation apd by-laws. (Brennan v Breezy Point Coop., NYLJ, March 17, 1982, p 14, col 1.) A proprietary lease, like any other lease or contract, is to be interpreted in light of the purposes sought to be attained by the parties (Farrell Lines v City of New York, 30 NY2d 76). “Intention is to be found in the language used. It is the only sure guide.” (Matter of Loew’s Buffalo Theatres, 233 NY 495, 501.) In this case, where the fate of the tenant shareholders is literally in their own hands, the lease agreements provide broad powers and discretion in the board of directors and a minority of tenants cannot be heard to complain if a majority acts, within certain bounds and pursuant to certain procedures, in a manner which they find inconvenient or ill-advised.
The question presented then is not one of power but whether the particular resolution is enforceable. (Linden Hill No. 3 Corp. Corp. v Berkman, 61 Misc 2d 275.)
A co-operative may, in some sense, restrict the activities of tenants or restrain certain conduct. It may ban or restrict dogs or other animals (Knolls Corp. Section No. II v Cashman, 19 AD2d 789, affd 14 NY2d 579), or require tenants to replace outmoded refrigerators (Linden Hill No. 3 Corp. Corp. v Berkman, supra), or ban the use of washing machines (Hilltop Vil. Corp. No. 4. v Wolman, 13 Misc 2d 753; see, generally, Note, Judicial Review of Condominium Rulemaking, 94 Harv L Rev 647).
*677 In judicial oversight of the rule-making powers of a cooperative or a condominium, the standard of review is based upon the reasonableness of the rule or regulation. (Id., p 659.) Thus, a court may refuse to enforce regulations that are “‘unreasonable’” or “‘arbitrary or capricious.’” (Id., p 658.) While the courts that have utilized this standard “have not elaborated on its doctrinal basis, reasonableness review resembles an equity court’s balancing of the relative hardships among the parties”. (Id., p 658.) But, if a challenged rule bears a relationship to the legitimate purposes of the co-operative or condominium, the board’s discretion in promulgating the rule will ordinarily not be deemed arbitrary and capricious. (See Hidden Harbour Estates v Norman, supra.)
One court, in analyzing the assessment made for maintenance and repairs stated that “[a]bsent a demonstration of the board’s lack of good faith, self-dealing, dishonesty or incompetency, its determination * * * should not be judicially reviewed.” (Papalexiou v Tower West Condomium, 167 NJ Super 516, 528.) This is a recitation of the well-known “business judgment” rule under which a court will not and should not tell the board of directors how to run the co-op. (423-443 Tenants Corp. v Kretchmer, NYLJ, Nov. 26, 1980, p 6, col 4.)
The mere presence of self-interest in the actions of the majority cannot conclude the inquiry into bad faith (see Note, Judicial Review of Condominium Rulemaking, 94 Harv L Rev 647, 666). It must be determined if the majority was motivated by actual malice and whether it acted from a bona fide belief that the burdens of compliance with a restriction were proportionate to those benefits within the purposes of the condominium or co-operative (ibid.; see, also, Thousand Islands Park Assn, v Tucker, 173 NY 203).
But, how far may a regulation extend? When does it become unreasonable? I hold that the Resolution under scrutiny is a reasonable exercise of the board’s powers. To meet the problem of the insecurity of tenants due to an increase in crime, the co-operative adopted a rule requiring each tenant to pay additional monthly rent of $25 or, at his or her option, to serve on the tenant patrol. It was apparently the view of the co-operative that its security program *678 would be more effective if the tenants were to perform the services since the additional rentals could not, at the levels fixed, provide an adequate hired patrol. Under the mechanism developed by the co-operative, tenant “volunteers” would, in essence, pay the additional rental but earn back the charge (in the form of a credit) for performing services.
It seems illogical to suppose that a rule providing a choice — payment — would be enforceable as a valid exercise of the co-operative’s authority to safeguard the building, while a similar rule providing an additional alternative (labor) would not.
The respondent contends that providing an option to the tenant shareholders, the alternative being performance of some service, is involuntary servitude. The respondent also argues that the measure discriminates against the sick, the poor, and the elderly, who are either unable to pay or to work.
What seems at first glance to be “involuntary servitude” is “voluntary labor” and not an unreasonable intrusion upon the rights of the tenants. Our society abounds with rules and each, in some fashion, discriminates against or in favor of someone. Age limits exist for the hiring of policemen. Income limitations restrict access to a plethora of government benefit programs. Affirmative action policies have been recognized as valid methods of correcting prior wrongs. Arbitrary, unreasonable and capricious action is proscribed, not discrimination per se (Matter of Neil v Wagner, 27 Misc 2d 1053).
It cannot be said that the Resolution involves any State action which, if selectively enforced, would deprive the respondent of the equal protection of the law. (Lincoln Guild Housing Corp. v Wolfson, NYLJ, Oct. 29, 1979, p 7, col 4.) The essence of the right to “equal protection of the laws” is that all persons similarly situated be treated alike (Uberman v Lasner, 55 Misc 2d 1027). It does not follow from hardship that equal protection has been denied (College Barn v State of New York, 60 Misc 2d 715, affd 25 NY2d 657). Where a statute exists to specifically protect shareholders from illegal discrimination, it pertains only to the right to participate equally in the co-operative *679 ownership of real estate and addresses discrimination based upon race, creed, national origin, or sex, not the ability to pay or work, which is not necessarily related to age (Civil Rights Law, § 19-a).
In this case, some tenants may be physically unable to serve on the tenant patrol. That service is not mandated. It is an alternative to payment. The Resolution of April 27, 1981 provides another choice than simply paying the additional rental. That choice calls for a reasonable kind of service related to the necessity of the additional rental which was intended as an offset to the cost of a security program. As constituted, it is no more repugnant than the single, narrow choice of payment which could have been exacted.
The Resolution, however, does contain defects which warrant a finding, not of unreasonableness, but of unenforceability. Pursuant to the by-laws, the board of directors may determine what sum shall be necessary to cover the operating expenses of the corporation. Such estimates are to be made at an annual meeting in January of each year. The board may also make additional assessments if it resolves that an emergency exists. The provisions of the lease agreement provide similar powers and broad discretion in the board of directors. The assessment enacted pursuant to the Resolution was not made at an annual meeting. Neither was it made at a “special emergency” meeting, clearly and unequivocally designated as such. In addition, since the assessment was in the nature of an additional operating expense (to provide additional building security), it must be paid by tenant shareholders in proportion to their holdings in the corporation. This is not the case here. Finally, in resolving that the increased operating costs were necessary for building security, the board of directors did not provide for disposition of all of the funds received, assuming that the number of tenant volunteers was less than the number of tenants in the co-op. If the Resolution were passed at an annual meeting under the guise of ordinary operating expenses, the intermingling of such funds with the general treasury would not seem improper. However, these moneys should be expended for the cost of additional security guards. On the *680 other hand, if the board should choose to address a “special emergency” at an emergency meeting, then the funds must also be used for that purpose and not accumulate indefinitely as part of the general treasury. In that event, therefore, a rule to be adopted at some future date, which is designed to meet an emergency situation should provide for the disposition of the surplus funds.
For the foregoing reasons, the motion by the petitioner for summary judgment is denied and the cross motion by the respondent for summary judgment is granted.
The Resolution having been found invalid and the nonpayment proceeding dismissed, respondent’s counterclaims for declaratory relief and an injunction are dismissed as moot. With respect to the counterclaim for harassment, considering the conduct of the parties, the pleadings and the stipulated facts, there appears to have been a genuine dispute regarding the limitations upon the powers of the board of directors and not a suit motivated by malice. That counterclaim is dismissed.