Richard I. JOHNSON, et al.,
Appellants,

v.

Annie HOBSON, et al., Appellees.

No. 84–1187.

District of Columbia Court of Appeals.
Submitted Jan. 17, 1986.
Decided March 12, 1986.

Richard I. Johnson and Douglas D. Brown, pro se.

Richard E. Schimel, Bethesda, Md., was on brief for appellees.

John H. Suda, Acting Corp. Counsel, with whom Charles L. Reischel, Deputy Corp. Counsel, and William J. Earl, Asst. Corp. Counsel, Washington, D.C., filed a memorandum in lieu of brief on behalf of appellees District of Columbia and Thomas Bessey.

Before PRYOR, Chief Judge, and NEWMAN and FERREN, Associate Judges.

PRYOR, Chief Judge:

In this case, the Board of Directors (the Board) of Fairfax Village IV Condominium (Condominium) implemented a regulation authorizing the towing of cars parked on the Condominium parking lot without current license plates and registration. Appellants, unit owners at the Condominium whose cars were towed, challenged this regulation and brought suit against the Board, the manager of the Condominium, the Condominium community association, Metropolitan Police Officer Thomas A. Bessey, and the District of Columbia. Cross-motions for summary judgment were filed, and the defendants' motions for summary judgment were granted. Plaintiffs then moved to vacate the grant of summary judgment, arguing that material issues of fact remained in dispute. This motion was denied.

Two primary claims are presented on appeal. First, it is asserted that granting the Board's motion for summary judgment was improper because material issues of fact remain in dispute. Next, it is argued that the granting of summary judgment was error because the Board's parking regulation was unreasonable as a matter of law. We find these claims to be without merit and affirm.

I

Fairfax Village IV is a condominium development located in the District of Columbia. Section IV of the Condominium contains 85 housing units, and has an open parking lot with space for 58 cars. Because of the limited number of spaces, a shortage of parking existed at the Condominium. Exacerbating this shortage were cars without current license plates and registration parked on the lot for long periods of time.

The Board received numerous complaints from unit owners about the shortage of parking spaces for daily parking at the Condominium. At a special meeting held on June 1, 1981, the Board decided to address the parking problem by prohibiting unit owners from parking cars without current license plates or registration on the Condominium lot. To implement this policy, the Board voted to file P.D. Form 771 with the Metropolitan Police Department. This form would authorize the District of Columbia Department of Environmental Services to tow abandoned cars that lacked authorization to park on the Condominium

property.[1] Unit owners were notified at a regular meeting of the homeowners' association on June 6, 1981, that the Board intended to have cars with invalid license plates and registration towed.[2]

Eleven months passed with no further action on the parking issue. Then, on May 15, 1982, the Board placed written warnings on eighteen cars, informing the owners that cars without "current tags and current registration would be considered abandoned" and towed on or after May 19, 1982. Subsequently, Floyd D. Turner, President of the Board, filed Form P.D. 771 with the Department of Environmental Services. This form listed eighteen cars without current tags and registration and requested that they be removed.

On June 6, 1982, Officer Thomas A. Bessey of the Metropolitan Police Department visited Fairfax Village IV in response to the P.D. 771 that had been filed. Along with Floyd D. Turner, Officer Bessey inspected the cars listed on the P.D. 771 for current tags and registration. Following this inspection, Bessey placed notices on 18 cars, stating that the cars would be towed and impounded if not moved within 72 hours.[3]

On June 24, 1982, approximately eight cars that had neither been moved nor registered since June 6, 1982, were towed and impounded.

On May 23, 1983, three persons whose cars had been towed on June 24, 1982, sued the Fairfax Village IV community association, the Condominium property manager, the Board members individually, Officer Bessey, and the District of Columbia, alleging negligent impoundment or conversion of a car.[4]

After discovery, appellants moved for partial summary judgment as to the issue of liability. Defendants made cross-motions for summary judgment. In its motion, the Board argued that the parking regulation at issue was a valid exercise of the Board's power. Officer Bessey and the District of Columbia, in their motion for summary judgment, argued that the impoundment of the cars was reasonable and authorized by statute, and that the actions of the District and Officer Bessey were protected by qualified immunity.

After a hearing, the trial judge denied appellants' motion for summary judgment, and granted the cross-motions for summary judgment made by the Board, Officer Bessey, and the District of Columbia. In

---

1. The minutes of the June 1, 1981 meeting of the Board reported the action on the parking problem as follows: "Clyde Solomon spoke to having cars with dead tags removed. Will get necessary forms for this. Motion made to complete forms to complete this process, seconded and passed."

2. The minutes of the June 6, 1981, homeowners' association meeting reported the announcement of the Board's action on the parking issue as follows:

 Clyde Solomon spoke on the parking problem: The resolution is still in possession of the attorney; in the meantime the Board intends to have cars with dead tags towed. Is a first step in recovering our parking lot. This will serve as a notice that the Board intends to do this [within] the next 2 weeks.

3. The Metropolitan Police Department has authority, under D.C. Code § 40–812 (1981), to tow cars parked on private property without the owner's consent. This section provides, in pertinent part:

It shall constitute an infraction within the meaning of the District of Columbia Traffic Adjudication Act ... to park, store, or leave any vehicle of any kind, whether attended or not, or for the owner of any vehicle of any kind to allow, permit, or suffer the same to be parked, stored, or left, whether attended or not, upon any public or private property in the District of Columbia, other than public highways, without the consent of the owner of such public or private property and the Mayor of the District of Columbia, and his designated agent or agents, are authorized to remove and impound any vehicle parked, stored, or left in violation of this chapter....

4. A claim alleging wrongful foreclosure of appellant Richard I. Johnson's condominium unit was also made at this time. On October 7, 1983, however, Judge Joseph Hannon severed the wrongful foreclosure action from the claim for negligent impoundment or conversion of a car.

so doing, the trial judge found "no material disputed fact in [the] record," and the parking regulation adopted by the Board to be "reasonable."

Appellants then moved, on June 1, 1984, to vacate the judgment of dismissal. On July 24, 1984, the trial judge denied appellants' motion to vacate without explanation. This appeal followed.

## II

On appeal, appellants claim initially that the trial court erred in granting summary judgment because material issues of fact remained in dispute. In particular, appellants argue that a factual dispute existed as to whether the Board of Fairfax Village IV Condominium was properly elected and thus empowered to promulgate and enforce parking regulations. After review of the record before the trial judge on summary judgment, we find that appellants failed to establish the existence of such a factual dispute.

Summary judgment may be granted in an action "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no issue of material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c); *Burch v. Amsterdam Corp.*, 366 A.2d 1079, 1083–84 (D.C.1976). The party moving for summary judgment bears the burden of demonstrating the absence of any factual issue. *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); *Burch v. Amsterdam Corp.*, *supra*, 366 A.2d at 1084.

To survive a motion for summary judgment, "the opposing party need only show that there is sufficient evidence supporting the claimed factual dispute to require a

jury or judge to resolve the parties' differing versions of truth at trial." *International Underwriters, Inc. v. Boyle*, 365 A.2d 779, 782 (D.C.1976). Super.Ct.Civ.R. 56(e) provides, however, that

> [w]hen a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise provided in this Rule, must set forth specific facts showing there is a genuine issue for trial.

*Id.* Applying this rule, we have held that where the movant has made a prima facie showing of entitlement to summary judgment, "the opposing party, to prevail, must rebut with specific evidence." *Wyman v. Roesner*, 439 A.2d 516, 519 (D.C.1981); *see also Willis v. Cheek*, 387 A.2d 716, 719 (D.C.1978).

██ In support of its motion for summary judgment, the Board asserted that the challenged parking regulation was a valid exercise of its power. In support, the Board proffered specific evidence, including the affidavit of Floyd D. Turner, Board President at the time of the events at issue in this case. This affidavit stated, among other things, that "Fairfax Village IV Condominium has designated the Board of Directors to be the executive organ of Fairfax Village IV Condominium..:." The affidavit also recounted the procedural steps taken by the Board to implement the new parking policy.

In opposing the Board's motion for summary judgment, appellants submitted only an unsworn statement of material facts in dispute. While this statement did make reference to the validity of the Board's election, no affidavits or other factual averments were proffered in support of this contention.[5] Thus, the record before the trial judge was devoid of specific factual

---

**5.** Moreover, we note that in the memorandum of points and authorities submitted in support of their motion for partial summary judgment, appellants conceded the Board's authority to promulgate the regulation authorizing the towing of cars:

> The plaintiffs wish the court to assume, for purpose of this motion, that said regulation exists and that their cars were without current tags and registration at the time of the impoundment.

support for appellants' contention that the issue of the validity of the Board's election was in dispute. The trial judge did not err, therefore, in concluding that no issue of material fact was in dispute on the Board's motion for summary judgment.[6]

### III

We next consider whether the trial judge correctly ruled that the Board was entitled to judgment in this case as a matter of law. Resolving this issue requires us to determine whether the parking regulation implemented at the Condominium was a proper exercise of the Board's power.

It is well established that the governing body of a condominium enjoys broad authority in regulating the affairs of the property. Indeed, a leading case in the area of condominium governance explains that

> inherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub-society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization.

*Hidden Harbour Estates, Inc. v. Norman,* 309 So.2d 180, 181–82 (Fla.Dist.Ct.App. 1975).

■ While the governing body of a condominium has broad authority to regulate the internal affairs of the development, this power is not without limit. Indeed, courts have used their equitable power to review the regulatory actions of condominium governing bodies. *See* Note, *Judicial Review of Condominium Rulemaking,* 94 HARV.L. REV. 647, 658–63 (1981). In so doing, courts have adopted a "reasonableness" standard of review. *See Hidden Harbour Estates, Inc. v. Norman, supra,* 309 So.2d at 182; *see also Ryan v. Baptiste,* 565 S.W.2d 196, 198 (Mo.Ct.App.1978); *Holleman v. Mission Trace Homeowners Association,* 556 S.W.2d 632, 636 (Tex.Civ.App. 1977). Under this standard,

> [i]f a rule is reasonable the association can adopt it; if not, it cannot.... Of course, this means that each case must be considered on the peculiar facts and circumstances thereto appertaining.

*Hidden Harbour Estates, Inc. v. Norman, supra,* 309 So.2d at 182.[7]

■ In assessing the reasonableness of condominium regulations, courts have scrutinized both substantive and procedural aspects of such rulemaking. In reviewing the substance of condominium regulations, courts have sought to determine whether the action taken was within the legal powers granted the governing body by relevant statutory or condominium document provisions. *See, e.g., Makeever v. Lyle,* 125 Ariz. 384, 388–89, 609 P.2d 1084, 1088–89 (Ct.App.1980) (condominium association may not deprive owner of his interest in common elements absent specific authorization in statutes, declaration of submission, or bylaws); *Juno by the Sea North*

6. On appeal, appellants make no specific argument that the trial court erred in granting summary judgment as to Officer Bessey and the District of Columbia. Nevertheless, we have reviewed the record and conclude that appellants failed to establish the existence of a material issue of fact in dispute, and that Officer Bessey and the District of Columbia were entitled to judgment as a matter of law.

7. We note that some courts have adopted the "business judgment rule" as a means of applying

the reasonableness standard of review. *See Rywalt v. The Writer Corp.,* 34 Colo.App. 334, 335–37, 526 P.2d 316, 317 (Ct.App.1974); *Papalexiou v. Tower West Condominium,* 167 N.J.Super. 516, 525–30, 401 A.2d 280, 285–87 (Super.Ct.Ch. Div.1979) (the "business judgment" rule requires the presence of fraud or lack of good faith before the decision of the Board can be questioned); *see generally,* Note, *supra,* at 663–67. We decline to adopt this approach.

*Condominium Association, Inc. v. Manfredonia*, 397 So.2d 297, 303 n. 5 (Fla.Dist. Ct.App.) (condominium association may not enact "eminently reasonable" regulation requiring interior of each unit to be cleaned by an association retained cleaning service, because the association has little authority over individual condominium units) (dicta), *review denied*, 402 So.2d 611 (1981); *Holleman v. Mission Trace Homeowners Association, supra*, 556 S.W.2d at 636 (Board may require unit owners to park cars overnight in garage where Board is authorized to make reasonable rules pertaining to common area and purposes of condominium include providing for maintenance, preservation, and architectural control of residential lots).

Courts have also examined the substance of condominium regulations to ensure that they bear a relationship to the "health, happiness and enjoyment of life of various unit owners." *Hidden Harbour Estates, Inc. v. Norman, supra*, 309 So.2d at 181 (prohibition on use of alcoholic beverages in common areas not unreasonable).[8]

Thirdly, courts have analyzed the substance of condominium regulations to determine whether they have an unfair or disproportionate impact on only certain unit owners. *See, e.g., Garrison Apartments, Inc. v. Sabourin*, 113 Misc.2d 674, 678–80, 449 N.Y.S.2d 629, 633–34 (Civ.Ct.1982) (condominium regulation establishing security patrol and providing for service on patrol in lieu of $25.00 per month assessment not discriminatory to tenants physically unable to serve where service not mandated but an alternative to payment); *LeFebvre v. Osterndorf*, 87 Wis.2d 525, 533, 275 N.W.2d 154, 159 (Ct.App.1979) (restriction on unit owner's rental of unit reasonable where no claim in the record of discrimination or malice against the owner).

In their analysis of reasonableness, courts have also scrutinized procedural aspects of condominium rulemaking. In this area, courts have sought to determine whether unit owners had notice of the governing body's authority to regulate in the area at issue. *See, e.g., Juno by the Sea North Condominium Association, Inc. v. Manfredonia, supra*, 397 So.2d at 304 (parking regulation reasonable where prospective unit owners had notice of the assignment of parking spaces); *Point East Management Corp. v. Point East One Condominium Corp.*, 282 So.2d 628, 630 (Fla.1973) (twenty-five year management contract not invalid where the contract and its terms were made known—or at least available—to all who bought or considered buying condominium units), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974).

Finally, courts have found regulations unenforceable where the governing body failed to follow the procedures mandated by applicable condominium documents in promulgating regulations. *See, e.g., Pepe v. Whispering Sands Condominium Association, Inc.*, 351 So.2d 755, 757–58 (Fla. Dist.Ct.App.1977) (consolidation of budgets of various sections of condominium invalidated where governing body failed to amend condominium declaration); *Johnson v. Keith*, 368 Mass. 316, 320–22, 331 N.E.2d 879, 882 (1975) (attempt to ban pets through promulgation of regulation invalidated where condominium documents require that restrictions on use of units be implemented through amendments to bylaws); *Ashelford v. Baltrusaitis*, 600 S.W.2d 581, 587–88 (Mo.Ct.App.1980) (denial by homeowners' association of authorization to build prefabricated home invalidated where wrong entity acted on application, and applicant was not given timely notice of reasons for denial); *Garrison Apartments, Inc. v. Sabourin, supra*, 113 Misc.2d at 678–80, 449 N.Y.S.2d at 633–34

---

**8.** One commentator has noted, however, that "[g]iven their breadth and imprecision, the references in *Hidden Harbour* and its progeny to "health, happiness and enjoyment of life" as legitimate purposes may not be adequate to bar the enforcement of restrictions, in part because virtually every restriction promulgated by a majority of a condominium's unit owners will serve the majority's "happiness and enjoyment of life." Note, *supra*, at 663.

(assessment invalidated where Board failed to follow proper procedures); *Holleman v. Mission Trace Homeowners Association, supra,* 556 S.W.2d at 636 (parking regulation reasonable where appellants received notice of special association meeting held to discuss the regulation, expressed their views, and voted on proposal).

Turning to the facts of the present case, it is clear that the parking regulation promulgated and implemented by the Board was reasonable. As to the substance of the challenged regulation, we note initially that the action taken was within the legal powers granted the Board by relevant statutory and Condominium document provisions. Subject to limitations specified in the condominium instruments, the statutes in the District of Columbia regulating condominiums, *see* D.C. Code § 45–1701 *et seq.* (1981) (Horizontal Property Act of the District of Columbia); *id.* § 45–1801 *et seq.* (Condominiums), grant the unit owners' association extensive power over the operation of the property. Thus, the unit owners' association has the power, among other things:

> (1) ... to govern all matters relating to the condominium;
>
> \* \* \* \* \* \*
>
> (5) ... to manage the common elements and to provide for the use, rental or operation of common elements....

*See* D.C. Code § 45–1848 (1981).

Under D.C. Code § 45–1841(b) (1981), the unit owners' association may designate, in the bylaws of the condominium, an executive organ of the association. Moreover, if such an executive organ is designated, the statutes provide, "The bylaws may delegate to such organ ... any of the powers and responsibilities assigned by this chapter to the unit owners' association." *Id.*

The bylaws of Fairfax Village IV designate the Board as the executive organ of the unit owners' association, and provide that "the affairs and business of the Condominium shall be managed by a Board of Directors." The bylaws further establish that "[t]he Board of Directors shall have the power from time to time to adopt any Rules and Regulations deemed necessary for the enjoyment of the Condominium ...," and assign the Board responsibility for providing for the "operation, care, upkeep, maintenance and surveillance of all of the Common Elements and services of the Condominium." Parking areas are enumerated in the bylaws as one of the general common elements of the Condominium. Thus, under applicable statutory and bylaw provisions, the Board had clear authority to regulate parking at the Condominium.

We observe further that the Board's regulation of parking bears a clear relationship to the "health, happiness, and enjoyment of life of various unit owners." *Hidden Harbour Estates v. Norman, supra,* 309 So.2d at 182. In this case, the Board passed the challenged regulation only after receiving numerous complaints from unit owners concerning the unavailability of daily parking spaces at the Condominium. While certain unit owners may have objected, it is beyond argument that the Board acted to enhance the quality of life of unit owners.[9]

There is also no indication that the regulation at issue was applied discriminatorily, or that it had an unfair impact on only certain unit owners. Here, the Board attempted to deal with the parking shortage by having cars without current license plates or registration towed. Significantly, several of those cars that had notices placed on them by Officer Bessey on June 6, 1982, were either moved or registered by June 24, 1982, when cars were towed. Thus, while the regulation affected only those unit owners with unregistered or unlicensed cars, there is nothing in the record

---

**9.** We note that in applying the reasonableness standard, courts have upheld regulation of parking. *See, e.g., Juno by the Sea North Condominium Association, Inc. v. Manfredonia, supra,* 397 So.2d at 304; *Holleman v. Mission Trace Homeowners Association, supra,* 556 S.W.2d at 636.

to suggest that it was applied discriminatorily or unfairly.

As to the procedural aspects of the Board's action on the parking regulation, here, too, we perceive nothing improper. As discussed above, relevant statutory and bylaw provisions provided prospective unit purchasers with notice of the Board's authority to regulate parking. Moreover, the record before us demonstrates that Condominium owners were given ample notice of the parking regulation before its implementation. At a meeting of unit owners, held on June 6, 1981, the new policy was announced. Cars of unit owners were towed only after twelve months had passed, and two separate notices had been placed on cars in violation of the new policy.

Finally, the record before the trial judge on summary judgment does not establish that the Board failed to follow proper procedures in implementing the regulation. Indeed, the regulation was initially promulgated at a special meeting of the Board on June 1, 1981, and the minutes of that meeting clearly indicate that the motion to implement the policy was seconded and passed.

 Viewing the record in its entirety, we find no error in the trial judge's conclusion that the Board regulation was reasonable.[10]

*Affirmed.*

10. The final contention presented for review, that the trial judge erred in denying appellants' motion to vacate summary judgment, merits only brief discussion. In their motion to vacate, appellants argued that the trial judge erred in granting summary judgment because material factual issues remained in dispute. We have disposed of this argument in Section II, *infra.* In support of their motion, appellants proffered the affidavit of Richard I. Johnson, to support their contention that the Board was not validly elected. It is well established that when a motion to vacate is based on newly discovered evidence, the movant is required "to rebut the presumption that there has been a lack of dil-

igence." *United States v. Bransen,* 142 F.2d 232, 235 (9th Cir.1944). Based on this requirement, it has been held that "[s]ubsequent discovery of the importance of evidence which was in the possession of the applicant for a new trial, at the time of trial, does not entitle him to a new trial upon the ground of newly discovered evidence." *Id.* Here, the evidence appellants proffered on the motion to vacate could have, with the exercise of minimal diligence, been available at the time motions for summary judgment were made. Thus, we find no abuse of discretion in the trial court's denial of appellants' motion to vacate summary judgment.