558 So.2d 475 (1990)
CEDAR COVE EFFICIENCY CONDOMINIUM ASSOCIATION, INC., Appellant,
v.
CEDAR COVE PROPERTIES INC., Appellee.
Nos. 89-392, 89-1472.
District Court of Appeal of Florida, First District.
March 14, 1990.
*476 John H. Jones, Gainesville, for appellant.
James R. Spence, Orlando, and William C. Andrews of Scruggs & Carmichael, P.A., Gainesville, for appellee.
PER CURIAM.
Appellant, a condominium association, challenges the trial court's final judgments denying those parts of claims for special assessments relating to repair costs of balcony and exterior closet doors.[1] It contends that under chapter 718, Florida Statutes, and the condominium documents it is well within its authority to specially assess the members of the association, including appellee,[2] for the cost of these repairs. We agree and reverse.
The association argues that the balconies are "limited common elements" and that the expense of repair and maintenance of all common elements are "common expenses" for which it may assess its members pro rata. Appellee contends that the balconies are included within the vertical boundaries of the condominium documents' definition of a "unit" and that under the Condominium Act, common elements are those portions of condominium property which are not included in the units. It points out that the condominium documents require the unit owner to maintain and repair all portions of a unit except those maintained by the association.
The pertinent portions of the Condominium Act and the condominium documents provide (emphasis added):
Chapter 718, Florida Statutes (1987)
718.103
(6) "Common elements" means the portions of the condominium property which are not included in the units.
(7) "Common expenses" means all expenses and assessments which are properly incurred by the association for the condominium.
* * * * * *
(16) "Limited common elements" means those common elements which are reserved for the use of a certain condominium unit or units to the exclusion of other units, as specified in the declaration of condominium.
* * * * * *

*477 (23) "Unit" means a part of the condominium property which is subject to exclusive ownership. A unit may be in improvements land, or land and improvements together, as specified in the declaration.
* * * * * *
718.113
* * * * * *
(1) Maintenance of the common elements is the responsibility of the association. The declaration may provide that limited common elements shall be maintained by those entitled to use the limited common elements.
* * * * * *
Declaration Of Condominium
[Definitions]
* * * * * *
(b) "Common Elements" shall be all parts of condominium property not included within the unit boundaries as described in Schedule "B".
(c) "Limited Common Elements" means those common elements which are reserved for the use and purpose of a certain condominium unit or units to the exclusion of other units as specified in Schedule "B".
(d) "Common Expenses" include (1) expenses of administration; expenses of maintenance, operation, repair, or replacement of the common elements, and of the portions of units to be maintained by the Association; (2) expenses declared common expenses by provisions of the Declaration or by the By-Laws; and (3) valid charges against the condominium as a whole such as ad valorem taxes for the year in which this Declaration is recorded.
* * * * * *
4.4 Limitation upon Liability of the Association: Notwithstanding the duty of the Association to maintain and repair parts of the condominium property, the Association shall not be liable to condominium unit owners for injury or damage, other than the cost of maintenance or repair, caused by any latent condition of the property to be maintained and repaired by the Association, or caused by the elements or other owners or persons.

* * * * * *
6.1 Common Expense Fund: ... the Association shall estimate ... charges ... assessed to the owners (by) percentage attributable to each unit. If the estimated sum proves inadequate for any reason,... the Board may, at any time, levy a further assessment... . The common expense fund shall be assessed to cover the following: ... (c) The expense of maintenance, operation, repair or replacement of the common elements including, but not limited to, preservation of landscaping, employment of personnel needed, preservation or repair of walls, drives, streets, and building exteriors as the board may, from time to time deem appropriate.
* * * * * *
7.3 Units; Association Responsibility: the Association shall maintain and replace
(1) All portions of a unit, except interior surfaces, contributing to the support of the building, which portions shall include but not be limited to the outside walls of the buildings... .
* * * * * *
7.4 Units; Owner Responsibility: The responsibility of the unit owner shall be (1) To maintain, repair and replace at his expense all portions of his unit except the portions to be maintained, repaired and replaced by the Association.
* * * * * *
(3) Not to paint or otherwise decorate or change the appearance of any portion of the exterior of the building;
* * * * * *
7.7 Responsibility. If the damage is only to those parts of one condominiuim unit for which the responsibility of maintenance and repair is that of the condominium unit owner, then the said owner shall be responsible for reconstruction and repair after casualty. In all other *478 instances, the responsibility of reconstruction and repair after casualty shall be that of the association.

* * * * * *
7.9 Assessments. If the proceeds of insurance are not sufficient to defray the costs of reconstruction and repair by the Association, or if at any time during reconstruction and repair, or upon completion of reconstruction or repair, the funds for the payment of the costs of reconstruction or repair are insufficient, assessments shall be made against the condominium unit owners who owned the damaged condominium units, and against all condominium unit owners in the case of damage to the common elements, in sufficient amounts to provide funds for the payment of such costs. Such assessments against condominium unit owners for damage to condominium units shall be in proportion to the cost of reconstruction and repair of their respective units. Such assessments on account of damage in common elements shall be in proportion to the owners obligation of common expense.
* * * * * *
III. Vertical Boundaries of Units: The vertical boundaries of each unit shall be the exterior of the outside walls of the units. Where there may be attached to such outside walls a balcony, loggia, terrace, patio, a stairway, a stoop, landing steps, projecting cornices and copings, or other portion of the building, serving only the unit being bounded, such boundary shall be deemed to include all of such structures and fixtures thereon. However, as respects an interior wall, or walls between such units, including walls between balconies, the vertical boundaries of each unit shall be fixed at the center line of such walls between units, provided that such walls are not to be deemed party walls, but instead are part of the limited common elements as defined elsewhere in this Declaration, serving the only units affected. Every portion of a dwelling contributing to the support of an abutting unit shall be burdened with an easement of support for the benefit of such abutting unit.
* * * * * *
Articles of Incorporation
* * * * * *
ARTICLE III
* * * * * *
2. The Association shall have all the powers of a Condominium Association under and pursuant to Chapter 718, Florida Statutes, the condominium Act, and shall have all of the powers necessary to implement the purposes of the Association, including, but not limited to the following:
* * * * * *
c. To maintain, repair, replace and operate condominium property; specifically including all portions of the condominium property to which the Association has the right and power to maintain, repair, replace and operate in accordance with the Declaration of Condominium, the By-Laws, and Chapter 718 of the Florida Statutes, the Condominium Act.
* * * * * *
e. To reconstruct improvements on the condominium property after casualty or other loss, and the further improvement of the property.
* * * * * *
By-Laws
* * * * * *
6.5 Special Assessments. Special assessments, if required, shall be levied and paid in the same manner as heretofore provided for regular assessments. Special assessments can be of two kinds: (1) those chargeable to all members in the same proportions as regular assessments to meet shortages or emergencies, to construct, reconstruct, repair, or replace all or any part of the common elements (including fixtures and personal property related thereto) and for other purposes as shall have been approved by the members at a duly convened meeting; ... .
* * * * * *
*479 In case number 89-392, the trial court found that the association had failed to establish its foreclosure claim. In denying the motion for new trial, the court referred to its opinion in case no. 89-1472, in which it found that the balconies were "limited common elements". The court construed the condominium documents, which contained no specific provision for "limited common element" maintenance responsibility, to provide that individual unit owners should maintain their own balconies. It based its conclusion upon the finding that "... balconies are included within the definition of what a unit is ...", upon the variation in balcony sizes between units, and upon the absence of ground floor unit balconies.
Competent substantial evidence supports the court's construction of "limited common elements" to include balconies and exterior closet doors, the simple maintenance of which may be the responsibility of individual unit owners. However, the court also found that the balconies and doors were included within the condominium documents' definition of a "unit". These two findings present an inherent conflict.
Our review of the condominium documents discloses no definition of a "unit". We assume that the trial court was referring to the schedule "B", part II description of the verticle boundaries of a "unit" as a "definition" of "unit". In our opinion, this description is not a definition, but rather a characterization of the area a unit purchaser is entitled to use.
Construing the statute and condominium documents as a whole, and considering the evidence presented, we find that the association is obligated to provide repair and maintenance as the board may deem appropriate. Section 4.4 of the declaration of condominium specifically provides that the association is liable for the maintenance or repair of damage caused by the elements or by other owners. The record indicates that repairs to balconies and exterior closet doors were in fact necessitated by the elements. Under Florida law, the association is authorized to do what is necessary to protect the structural integrity of the building, its aesthetics and its members from liability for unsafe, or decrepit building exterior conditions including balconies and exterior closet doors.
Appellee concedes the association's authorization to regulate and maintain the condominium's aesthetics, including the building exteriors, so long as it exercises good business judgment. The "business judgment rule" will protect a board of directors as long as the board has acted in a reasonable manner. Farrington v. Casa Solana Condo. Ass'n. Inc., 517 So.2d 70 (Fla. 3d DCA 1987). "If, in the good business judgment of the association, such alteration or improvement is necessary or beneficial in the maintenance, repair, or replacement of the common elements, all unit owners should equally bear the cost as provided in the declaration, by-laws and statutes." Tiffany Plaza Condo. v. Spencer, 416 So.2d 823, 826 (Fla. 2d DCA 1982).
Where the repairs have been found to be reasonable, courts have held that consent of the members is not required. See Tiffany; Farrington. Ground floor units derive several benefits from the association's exercise of its business judgment in repairing and maintaining the balconies and doors, including the promotion of market value and sales through pleasant and uniform aesthetics, and the avoidance of damages liability. The association's exercise of authority in this case is reasonable to accomplish such purposes and carries greater weight since it operated pursuant to almost unanimous consent not obtained from members in the cases cited above.
The Act's definition of "limited common elements" implies they are a subset of "common elements" and therefore a "common expense" properly within the scope of the association's authority. Sections 6.1 and 6.2 of the declaration of condominium authorize the association to levy an assessment to maintain and repair all unit exteriors and common elements. Even if the balconies and closet doors are not considered "common elements", it is difficult to refute their classification as part of the unit exterior. The balconies and doors fall within the scope of the association's broad *480 authority to maintain condominium exteriors.
Section 7.3 authorizes the association to maintain and replace all portions of a unit including outside boundary walls of units. This authorization specifically includes the trial court's "description" of balconies and doors as included within the vertical boundaries of a "unit". Section 7.7 requires, as a prerequisite, a clear line of distinction between maintenance that is the responsibility of the unit owner and maintenance that is the responsibility of the association. Since it is not clear from the condominium documents whether or not a limited common element is the responsibility of the unit owner, we hold that maintenance and repair of the balconies and doors falls within the scope of "all other instances" and can only be construed as the association/board's responsibility.
Section 7.9 provides authority for the subject assessments only if the balconies and doors are considered common expenses. We find the "unit" interpretations fashioned below too restrictive of the condominium association's authority in the circumstances. Operation of incorporated condominium associations are commonly compared to the discretionary management function of a municipal corporation which also derives its powers, duties and existence from the state acting through its legislative body. Our interpretation reasonably extracts authorization of this discretionary management function from the Act and condominium documents construed as a whole.
The articles and the by-laws provide broad authority for the association to conduct reconstruction and repair operations for casualty or other loss and for other purposes approved by the members at a meeting. The weather damage, the repair of which was overwhelmingly approved by its members falls within the meaning of "other purposes". Therefore, it is well within the broad scope of authority granted the association to assess all unit owners for the subject repairs and improvements.
The express terms of the Condominium Act and the condominium documents grant broad authority to the association to regulate the use of the common elements and building exterior. See Juno By the Sea North Condo v. Manfredonia, 397 So.2d 297, 304 (Fla. 4th DCA 1981). The judgments below strictly construe the statutes and documents in a manner which does not provide buyers with the legislative interpretation polestar, "what the buyer sees is what the buyer gets". If a particular unit owner were to damage his own balcony or all balconies, it might be patently unfair, arbitrary and capricious for the association to assess all owners for the repair. But where, as here, the damage is due to the elements, it is prudent and reasonable for all association members to pay a proportionate share of the expenses of repair. It is clear that the intent of the condominium documents places repair and maintenance responsibility for all building exteriors upon the association and that the subject balconies and doors are included within this responsibility. The expenses incurred by the association, in reliance upon the near unanimous consent of its members to repair balconies and closet doors located on the condominium exteriors are valid and reasonable. We cannot say then, construing the statutes and condominium documents as a whole, that the association was without the authority to levy the subject assessments, nor that it acted unreasonably, arbitrarily or capriciously in protecting the condominium aesthetics and in protecting all members from possible damages liability.
Therefore, we REVERSE the trial court's denials of appellant's claims in foreclosure, and REMAND for proceedings consistent with this opinion.
SMITH and MINER, JJ., concur.
ZEHMER, J., concurs in result.
NOTES
[1] Case no. 89-392 involved expenses for initial balcony repairs at $1,000/voting unit and case no. 89-1472 involved further repairs to the balconies and the exterior closet doors at $1,200/voting unit, with a total $2,500/voting unit assessment.
[2] Appellee challenges assessments to its units located on the ground floor of the condominium.